## STATE, ex rel. WELLS v. MIAMI BEACH JOCKEY CLUB, Inc., et al.
### No. 69-748.
Circuit Court, Leon County.

August 11, 1969.

Charles H. Snowden, Miami, for the relator.

Judson A. Samuels, Hollywood and Arden Seigendorf, Assistant Attorney General, Miami, for the State Racing Commission.

J. Lewis Hall, Tallahassee, Charles H. Netter, South Miami, and Garland M. Budd, Miami, for Miami Beach Jockey Club, Inc.

GUYTE P. McCORD, Jr., Circuit Judge.

*Order denying motion for judgment on the pleadings:* This cause came on for hearing on August 6, 1969, on motion of respondent, Miami Beach Jockey Club, Inc., for judgment on the pleadings, said respondent and respondent, Florida State Racing Commission having both filed their returns to the alternative writ of mandamus heretofore issued. At the outset of the arguments on said motion all parties stipulated and agreed to the following —

1. They waived notice of hearing on the motion for judgment on the pleadings and consent that it be heard at this time.

2. A copy of chapter 69-14, Laws of Florida, filed with the court and initialed by the court is a true and correct copy of said law.

3. The main issues of the case are issues of law. The facts are immaterial to such main issues. The decisive issues are the validity of said law and the actions of the respondent commission under said law.

4. The permit issued to respondent, Miami Beach Jockey Club, Inc., by respondent commission has been amended to reflect the original action and intent of said commission and the amended permit is now the permit under attack.

Upon consideration of the arguments of counsel for the respective parties in conjunction with the foregoing agreements, the court now being advised in the premises finds as follows —

1. The only legal issues raised in this proceeding which were argued on this motion are the following —

A. The sufficiency of the title of chapter 69-14, Laws of Florida.

B. Whether or not the action of the commission in granting the permit here under attack without requiring a referendum is valid.

C. Whether or not said act is invalid by reason of an arbitrary classification of the area.

2. Considering first the sufficiency of the title, relator contends the title omitted any reference to the act being applicable only to the Dade-Broward area and gave no indication that a referendum is not required for issuance of a license (if such is not required) and therefore violates section 6 of article III of the constitution of Florida. The Supreme Court of Florida has held many times that

the title of an act need not be an index to the body thereof; that the title is sufficient to comply with the constitution when it fairly gives notice of the subject matter of the act so as to reasonably lead to an inquiry into the body thereof; that wide latitude must be accorded the legislature in the enactment of laws and courts will nullify a statute or portion thereof as not within the purpose and scope of the subject expressed in the title only in a plain case of violation of the constitutional requirements as to the title of the act. The title of chapter 69-14 does not violate the constitutional requirements but gives sufficient notice of the subject of the act to reasonably lead to inquiry into the body thereof.

3. We consider next the contention that the permit issued without the requirement of ratification by a referendum is invalid. Respondents contend we are dealing here with a new aspect of racing — summer horse racing and that there is a contrast of language between the old law and the new portions of the chapter added by this amendatory act. To some extent this is true. We are dealing with a new aspect of racing previously provided for in chapter 550 — winter horse racing, dog racing, and harness racing. Respondents point to the wording of new §550.41 as follows —

". . . , the State Racing Commission *may issue a new permit for summer thoroughbred horse racing only. Such new permit holder within the area shall be permitted* during the period . . . of each year to conduct an additional one hundred and twenty (120) days of thoroughbred horse racing . . . , which additional period of racing shall be known as the 'summer thoroughbred horse racing period.' . . ." (Italics added.)

It is contended that the above italicized language demonstrates an intent of the legislature that no referendum be required (as is the case under chapter 550 with other racing) for ratification of the permit, since it states the commission "may issue a new permit for summer thoroughbred horse racing only," and goes on to say that such permit holder shall be permitted to conduct summer thoroughbred horse racing. It is argued that the lack of any reference to a ratification of the permit by a referendum indicates that no referendum is required to ratify a permit for this new aspect of racing. Respondents contend this is so under the rule of statutory construction stated in 50 American Jurisprudence 371, §367 — where an act contains special provisions (here provisions relating to issuance of permits for summer horse racing) they must be read as exceptions to a general provision in a separate earlier act (the

earlier provisions of chapter 550 relating to issuing permits for the various types of racing). §367 goes on to say, however —

"The general rule is, of course, applicable only as an aid in ascertaining and giving effect to the legislative intent; positive and explicit provisions, comprehending in terms a whole class of cases, are not to be restrained by applying to those cases an implication drawn from subsequent words, *unless that implication be very clear, necessary, and irresistible.*" (Italics added.)

Here §550.05 (a part of the previously existing law which is not expressly amended in any way by chapter 69-14) sets forth the time and method of applying for a permit to conduct race meetings. Section 2 thereof unequivocally states in pertinent part as follows —

"(2) Upon all applications filed and approved a permit shall be issued to the applicant setting forth the name, the location of the race track, the kind of racing desired to be conducted and a statement showing qualifications of the applicant to conduct racing at said track under this chapter; provided, *however, no permit shall be effectual to authorize any race until ratified by a majority of the electors participating in said election, and in the county in which applicant proposes to conduct racing; . . .*" (Italics added.)

The italicized portion above has applied uniformly to all racing under chapter 550 prior to the enactment of chapter 69-14 amending said chapter 550. As stated above said wording requiring ratification by referendum has not been expressly amended by any terms of chapter 69-14 and the court does not agree with the view that such portion has been amended by implication. Had the legislature intended to eliminate the requirement of a referendum for ratification of a summer horse racing permit it would have been a simple matter for it to have said so in the act. The court is unable to see any inconsistency between new §550.41 and old §550.05. Considering them in para materia it seems clear that ratification of all racing permits by referendum is required.

Respondents also contend that legislative intent to not require validation of a permit for summer horse racing by referendum was manifested by an amendment offered on the floor of the Senate which failed to pass (as shown by the "Journal of the Senate," April 25, 1969, attached as exhibit "B" to the return of Miami Beach Jockey Club, Inc.). Said amendment would have

provided — "Any new permit issued pursuant to this section shall be subject to approval by a referendum held for that purpose as provided in §550.06." (§550.06 sets forth the procedure for holding an election for ratification of a permit and it was not expressly amended by chapter 69-14.) If this proposed amendment shows such an intent, it shows such only as to one house of the legislature. But the court does not consider said proposed amendment necessarily shows such intent by the Senate. While said action could be an indication by one house of the legislature that a referendum not be required, it could also indicate a feeling of that house that §550.06 would apply to the new law irrespective of the proposed amendment and such would merely be unnecessary surplusage.

Respondents also call attention the fact that the Florida Racing Commission is an administrative agency charged with administering chapter 550 and that great weight should be given to its construction of the statute that no referendum is required for summer horse racing. The court is familiar with the rule that the administrative interpretation of a statute is entitled to great weight and ordinarily will not be disturbed by the court unless clearly erroneous or unauthorized. It is the court's opinion, however, that the interpretation made by the commission in this instance is clearly erroneous and unauthorized for the foregoing reasons.

4. We next consider relator's final contention that the act is invalid by reason of an arbitrary classification of the area. Relator contends that the act violates subsections (2) and (12) of section 11 of article III of the constitution of Florida. The court finds no merit to this contention. See Biscayne Kennel Club v. Florida Racing Commission, Fla., 165 So.2d 762, and Hialeah Race Course v. Gulfstream Park Racing Association, 37 So.2d 692.

5. Although the court here upholds the constitutionality of chapter 69-14, Florida Statutes, against the attack made upon it by relator, the motion of respondent for judgment on the pleadings must be denied because the amended permit issued to Miami Beach Jockey Club, Inc., on July 30, 1969, eliminates the requirement of ratification by referendum which was contained in the original permit issued on July 2, 1969.

In consideration thereof, it is ordered and adjudged that the motion of the respondent, Miami Beach Jockey Club, Inc., for judgment on the pleadings be and it is hereby denied.