573 So.2d 972 (1991)
BROOKRIDGE COMMUNITY PROPERTY OWNERS, INC., Etc., Appellant,
v.
BROOKRIDGE, INC., Etc., et al., Appellees.
No. 89-2311.
District Court of Appeal of Florida, Fifth District.
January 24, 1991.
Glen E. Greenfelder and David J. Murphy of Greenfelder, Mander, Hanson & Murphy, Brooksville, for appellant.
David C. Sasser of Johnston & Sasser, P.A., Brooksville, for appellee Brookridge, Inc.
William B. Eppley of High, Underwood & Eppley, P.A., Brooksville for appellee Mate, Inc.
Joseph M. Mason, Jr. of Merritt & Mason, Brooksville, for appellee Concerned Brookridge Property Owners.
COBB, Judge.
The issue on this appeal concerns the validity of a summary judgment entered by the trial court determining that age restrictions imposed on a platted community in Hernando County were unreasonable as a matter of law.
The community of Brookridge was generally marketed as a retirement community. In the original restrictive covenants there were no age restrictions. Brookridge, Inc., plaintiff below, was the developer of the property. The defendant below, Brookridge Community Property Owners, Inc. (hereinafter BCPO), consisted of the owners of the lots in the community, and its function was the collection of assessment fees and maintenance.
In 1982 Brookridge, Inc. assigned various rights to BCPO. In 1988, BCPO recorded a set of amended restrictions as revealed by the trial court's findings of fact:

*973 FINDINGS OF FACT
The Court has accepted the Stipulated Statement of Facts attached to the Reply Memorandum of Brookridge, Inc. The Court finds the following facts to be material to the determination of this motion:
1. Development of the Brookridge community began in 1973 and was substantially complete by 1976. The community was platted in five Units numbered 1, 2, 3, 4, and 6. The property designated as unit 5, but not platted, remains vacant acreage for which no restrictions have been recorded. Separate restriction Agreements were recorded for each individual Unit, but for determination of the Plaintiff's Motion for Summary Judgment, the provisions of those Declarations are identical.
2. The original Restriction Agreements for the five platted Units contained no age restrictions except that children under the age of 12 years using the swimming pool must be accompanied by an adult.
3. The community was marketed primarily as a retirement community, although no age restrictions were applied to purchasers nor were purchasers required to be retirees.
4. On June 9, 1988 the Defendant recorded in Official Records Book 694, Page 1108 of the Public Records of Hernando County a set of Amended Restrictions. These Amended Restrictions (hereafter the "Declaration") affected all Units in the community. The Declaration included as paragraph 18 the following age restriction:
Age regulations  each lot, unit and parcel upon which improvements are completed and which has one or more permanent occupants must have at least one occupant at least fifty-five (55) years of age and all permanent occupants must be at least eighteen (18) years of age.
Permanent Occupancy is defined in these restrictions as all persons who own any lot, unit or parcel for more than ninety (90) days in any calendar year. The Board of Directors of Brookridge Community Property Owners, Inc. will have the right to promulgate rules and regulations that govern visitations and temporary residents of persons who do not comply with this age requirement (emphasis supplied).
Permanent Occupants that own any lot, unit or parcel upon which improvements have been completed prior to the filing of this deed restriction shall be exempt from this age requirement.
The above paragraph was subsequently modified, ostensibly to correct a clerical error, to change the word residents (underlined above) to residence. The effect of the exemption contained in the third paragraph above is the creation of two classes of property subject to the age restrictions: (1) those lots upon which improvements were completed prior to June 9, 1988 and (2) all other lots.
5. The percentage of lots upon which completed residences existed are as follows:

 1988 Tax Roll 1989 Tax Roll
Unit 1 72% 73%
Unit 2 63% 65%
Unit 3 66% 68%
Unit 4 32% 35%
Unit 6 77% 80%
TOTAL 56% 59%

6. On the date that the subject age restrictions were imposed by the recording of the Declaration, approximately 140 of the 2,856 platted lots remained unsold.
7. At least 80% of the occupied homes in the community had at least one person fifty-five (55) years or older as of September 12, 1988.
Additionally, the following bylaws were filed by BCPO.
Section 2. Adult Community  Age Regulations:
1. In order to ensure strict compliance with the age requirement, a homesite application must be approved by the Director of Building and Restrictions before any building or manufactured home is to be commenced or erected, before any existing dwelling unit is sold or purchased, and before any dwelling unit is *974 leased or rented within any of the Subdivision Units in the Brookridge Community. Such application is intended only to ascertain the age of prospective residents and/or occupants and to determine whether they have any minor children under the age of eighteen (18) years of age, and shall be limited to this stated purpose.
2. In the event of the death of a spouse, the surviving spouse is exempt from the age requirement.
3. Those persons residing on the premises that, on an emergency basis, must assume temporary or permanent care, custody or control of a minor child may be excluded from this age requirement upon application and approval by the Board of Directors of Brookridge Community Property Owners, Inc., decided on a case by case basis.
4. Heirs that inherit property within the above listed Subdivision Unit may reside on the premises until the property is sold.
5. Persons owning lots as of the effective date of the deed restrictions who are not permanent occupants but that subsequent to the filing date become permanent occupants are excluded from this requirement.
6. Permanent occupants that lease property are exempt from the age requirement for the duration of any lease current at the time of the filing of the Deed Restrictions.
Altogether there were 2,856 platted lots. At the time of the amended restriction, most had been sold and 1,610 of those had been improved. Brookridge, Inc. still owned 130 of the 140 unsold lots. Brookridge, Inc. sought declaratory and injunctive relief against BCPO, and maintained that application of the age restrictions was unreasonable. Additionally, Brookridge, Inc. maintained that BCPO had no authority to modify the restrictions.
Subsequently, Brookridge, Inc. filed a motion for summary judgment and argued that the restrictions arbitrarily created two separate classes of property owners: (1) owners of property upon which improvements had been completed prior to June 9, 1988 and (2) owners of lots which did not include completed improvements as of June 9, 1988. Brookridge, Inc. alleged that approximately 60% of the 2,856 platted lots in the community contained completed improvements as of the effective date of the age restrictions, and that there was no reasonable basis for the exemption of the improved lots while imposing the restriction on persons who had not yet established residence in the community or purchased property in the community. BCPO's response basically was that in actuality most of the residents of Brookridge were already over the age of 55 and that noncompliance with the proposed age requirements was only some five or six percent. BCPO contended that exemptions were designed to ease the transitional period and were designed as reasonable approaches to achieving the wishes of a majority of the residents to provide housing for the special needs of an advanced age group.
The trial court entered summary judgment on behalf of Brookridge, Inc. and other plaintiffs. It found, as a matter of law, that the determination of the action was controlled by White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979). It invalidated the restrictions on that basis and found:
An age restriction which exempts at least 60% (and possibly 95%) of the lots within the community from application of the restriction reasonably is not designed to accomplish the restriction's intended purpose. The age restriction is discriminatory in its application in that it applies only to those persons not yet residing in the community although that group constitutes a minority of the lot owners. The restriction is arbitrary in that there can be no sound basis for excluding a majority of the lots from the age restriction if the restriction is actually intended to create `an older adult' community. The restriction contained in the Declaration is oppressive and discriminatory in that it prohibits current owners of unimproved lots from constructing a residence and residing thereon with younger members of a family, such as grandchildren, *975 which is allowed for current residences pursuant to the exemption. It is further oppressive in that persons who have purchased lots with the intention of retiring prior to the age of 55 years may not construct a residence and reside in the community unless and until at least one member of the family attains the age of 55 years or older.
BCPO was permanently enjoined from attempting to enforce the age restrictions and, in addition, the court reserved jurisdiction to consider an award of attorney's fees. BCPO has appealed.
We affirm the summary judgment entered by the trial court below on the basis of the "tipsy coachman" rule. See Carraway v. Armour and Co., 156 So.2d 494 (Fla. 1963). Although we cannot agree with the reasoning of the trial court below, we find that the plaintiffs below were entitled to judgment as a matter of law because BCPO, in purporting to impose age restrictions on lots sold without such restrictions through modification of recorded deed restrictions, was attempting to exercise authority that it did not have. Such authority could not have been assigned to it by Brookridge, Inc. because the latter did not have that authority to assign as against owners who purchased lots without notice of age restrictions based on residency or the prospect thereof. The argument of the appellant that it was assigned the developer's reserved right, ambiguous and vague at best, to modify the restrictive covenants to "better assure the protection of the value, desireability and attractiveness of this area" is singularly unpersuasive, particularly in light of the fact that the provisions of the recorded restrictive covenants concerning "Use of Lots" (number 4) and "Children" (number 15) were not included in the assignment from the developer to BCPO. The provision in regard to children merely stated that children under the age of 12 years using the pool must be accompanied by an adult  a clear implication to any prospective buyer that children under 12 could live in Brookridge based upon the original covenants of record. As pointed out by the Florida Supreme Court in the White Egret case:
With this type of land use restriction, an individual can choose at the time of purchase whether to sign an agreement with these restrictions or limitations.
In the instant case, almost all of the platted lots had been sold, and not all of the purchasers of these lots agreed to the imposition of age restrictions.
We agree with the appellant, however, that the trial court erred in retaining jurisdiction of the issue of attorney's fees that could be awarded pursuant to section 57.105, Florida Statutes (1989), and we reverse in regard to that issue.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
DAUKSCH and W. SHARP, JJ., concur.