883 So.2d 847 (2004)
Gregory HENDERSON, et al., Appellants,
v.
James V. CROSBY, etc., et al., Appellees.
No. 1D03-2367.
District Court of Appeal of Florida, First District.
August 24, 2004.
Rehearing Denied September 30, 2004.
*848 Susan L. Kelsey, Holland & Knight LLP, Tallahassee; Stephen F. Hanlon and Robin L. Rosenberg, Holland & Knight LLP, St. Petersburg, for Appellants.
Charlie Crist, Attorney General; Joe Belitzky, Senior Assistant Attorney General, Sean F. Callaghan, Assistant Attorney General, Tallahassee, for Appellees.
Mary M. Gundrum and Rebecca Sharpless, Florida Immigrant Advocacy Center, Miami, for Amicus Curiae Florida Immigrant Advocacy Center; James T. Miller, *849 Chair, Amicus Curiae Committee, Jacksonville, for Amicus Curiae Florida Association of Criminal Defense Lawyers; Hubert A. Grissom, General Counsel, Advocacy Center for Persons with Disabilities, Inc., Tampa, and Isaias Ortiz, Advocacy Center for Persons with Disabilities, Inc., Ft. Lauderdale, for Amicus Curiae The Advocacy Center for Persons with Disabilities, Inc.; Peter M. Siegel and Randall C. Berg, Jr., Florida Justice Institute, Inc., Miami, for Amici Curiae, The Volunteer Lawyers' Project for the Southern District of Florida and The Florida Justice Institute, Inc., in support of Appellants.
WEBSTER, J.
In this case of first impression, we are called upon to determine to what extent article I, section 21, of the Florida Constitution (the "access-to-courts" provision) requires the Florida Department of Corrections to provide more affirmative assistance to inmates in the preparation and filing of litigation papers than does the federal constitution. We conclude that the trial court applied the wrong test to determine that appellants were not entitled to any relief. Nevertheless, we affirm because we conclude, further, that, as a matter of law, either individually or collectively, the actions complained of by appellants do not constitute significant impediments to appellants' right of access to Florida courts.

I.
The pertinent facts are not in dispute. More than 30 years ago, Florida inmates challenged in federal court the adequacy of Florida prison law libraries pursuant to federal constitutional law. That litigation ultimately terminated in December 2000, when, applying United States Supreme Court precedent, the United States District Court for the Middle District of Florida entered an order approving the Department of Corrections' law library plan (including the titles to be included in the library collections). Hooks v. Moore, Case Nos. 71-144-CIV-J-21B & 71-1011-CIV-J-21B (M.D.Fla.). Beginning in 1996, based on its understanding of the most recent United States Supreme Court decision addressing the issue, the Department of Corrections had removed certain texts from its law libraries. Following the decision in Hooks, the Department instituted other policy changes, including the removal of word processing equipment from those law libraries that had such equipment.
Shortly after implementation of the policy regarding word processors, appellants filed an action against the Department's Secretary and Director of Program Services, seeking to represent "[a]ll persons who, now, or in the future, will be incarcerated as inmates in a facility run by the Florida Department of Corrections who have legal needs and no means by which to purchase legal advice or assistance." They ultimately claimed (among other things) that they had been deprived of their right of access to courts pursuant to article I, section 21, of the Florida Constitution as a result of the following actions of the Department: (1) removal of reference books and form pleadings from the state's prison law libraries; (2) limitation of access to legal materials through inter-library loans; (3) restriction on the hours and means of access to prison law libraries and restrictions on the use of those libraries for drafting legal pleadings and legal mail; (4) elimination of access to computers, word processors and typewriters for preparation of legal pleadings and legal mail; (5) reduction in the availability of inmate research aides to assist prisoners; (6) undue interference with inmates attempting to assist other inmates with their legal proceedings; (7) limitation on the *850 storage of legal materials within an institution; and (8) improper review of prisoner legal mail and legal documents designated for copying. Appellants' complaint sought declaratory and injunctive relief. The trial court granted appellants' motion for class certification.
The parties eventually filed cross-motions for summary judgment and memoranda of law, in which they argued that there were no disputed issues as to material facts, and that they were entitled to judgment in their favor as a matter of law. They also filed an extensive "joint stipulation of facts." Following a hearing, the trial court entered its order concluding that, based upon the stipulated facts, the challenged actions of the Department did not violate article I, section 21, of the Florida Constitution; granting appellees' motion for summary judgment; denying appellants' motion for summary judgment; and entering a final declaratory judgment consistent therewith. In its order, the trial court stated:
The [appellants] correctly point out that the fact that Florida's constitution contains a specific provision for access to courts differentiates the analysis of whether access to courts is infringed under Federal law from that analysis under Florida law. Under Florida law, if the challenged regulation or policy "obstructs or infringes that right to any significant degree," Florida's article I, section 21 guarantee that "justice shall be administered without sale, denial, or delay" is violated. See Mitchell v. Moore, 786 So.2d at 527.
However, it appears that the trial court then applied the federal test to analyze the Department's actions.
This appeal follows. Because the sole issue before us is whether, based upon the stipulated facts, the Department's actions (either individually or collectively) violate article I, section 21, as a matter of law, the applicable standard of review is de novo. See, e.g., Spears v. Albertson's, Inc., 848 So.2d 1176, 1177 (Fla. 1st DCA 2003) ("The standard of review applicable to a grant of summary judgment is de novo") (citing Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000)).

II.
The United States Constitution does not include any provision similar to article I, section 21, of the Florida Constitution, expressly recognizing a right of access to the courts. Nevertheless, the United States Supreme Court has held that prisoners have a "fundamental constitutional right of access to the courts" implied from the federal constitution. Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In Bounds, the Court said, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents[,] with notarial services to authenticate them, and with stamps to mail them." Id. at 824-25, 97 S.Ct. 1491. Moreover, the Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. 1491. Later, in Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court clarified its holding in Bounds, stating that "Bounds did not create an abstract, freestanding right to a law library or legal assistance," and that an inmate alleging a Bounds violation must show actual injury by demonstrating "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal *851 claim." Id. at 351, 116 S.Ct. 2174. The Court further observed that:

Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.
Id. at 355, 116 S.Ct. 2174. Finally, the Court noted that a prison regulation impinging on an inmate's constitutional right of access to the courts would be upheld if it was "`reasonably related to legitimate penological interests,'" explaining that "`[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.'" Id. at 361, 116 S.Ct. 2174 (quoting from Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Although appellants did not raise a federal constitutional claim, it appears that the trial court analyzed appellants' complaints by applying the test outlined in Bounds and Lewis.
Appellants appear to concede that, pursuant to the federal test, the Department's actions (individually and collectively) would not constitute a violation of that right of access to courts implied from the federal constitution. However, they argue that article I, section 21, of the Florida Constitution affords them more rights than does that implied from the federal constitution. The gist of appellees' argument, on the other hand, is that the Florida access-to-courts provision affords appellants no more rights than does the right of access implied from the federal constitution and that, therefore, the Department is required to provide only such affirmative assistance as may be necessary to permit inmates to prepare and file challenges (direct and collateral) to their convictions and sentences and the conditions of their confinement, and claims seeking to vindicate fundamental constitutional rights. As we shall explain, we are persuaded that appellants' position is the correct one on this point.

III.

A.
Article I, section 21, of the Florida Constitution states that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." It is generally recognized that, like similar provisions contained in the constitutions of other states, our access-to-courts provision has its roots in chapter 40 (later recodified as chapter 29) of the Magna Carta. See, e.g., G.B.B. Invs., Inc. v. Hinterkopf, 343 So.2d 899, 901 (Fla. 3d DCA 1977); Talbot D'Alemberte, The Florida Constitution 32 (1991); Judith Anne Bass, Note, Article I, Section 21: Access to Courts in Florida, 5 Fla. St. U.L.Rev. 871, 873-74 (1977). See generally Jonathan M. Hoffman, By the Course of the Law: The Origins of the Open Courts Clause of State Constitutions, 74 Or. L.Rev. 1279, 1281, 1295 n. 104 (1995). Translated from its original Latin, chapter 40 provides, "`To no one will we sell, to no one will we refuse or delay, right or justice.'" Hoffman, supra, at 1285 n. 38 (quoting from William S. McKechnie, Magna Carta: A Commentary on the Great Charter of King John 395 (2d ed.1914)). According to one commentator, although "[t]he constitutions of thirty-nine *852 states contain `open courts' or `remedies' clauses," "[t]he courts are in total disarray over how to interpret" such clauses. Hoffman, supra, at 1279, 1282. That same commentator provides convincing historical support for the proposition that chapter 40 of the Magna Carta was intended, "at a time when courts were still considered a political arm of the Crown," "as a guarantee of freedom of the judiciary from corrupt influence and improper meddling" (id. at 1287); and "to restore the integrity of the courts by curtailing the selling of writs." Id. at 1286. According to this commentator, the same types of considerations motivated the initial adoption of similar provisions in state constitutions during, or shortly after, the American Revolution. Id. at 1296-1311. Those states (like Florida) that later adopted similar provisions appear simply to have borrowed from the constitutions of other states, without any meaningful discussion. Id. at 1284-85.
Some version of the access-to-courts provision has been a part of every Florida constitution except that of 1868. Psychiatric Assocs. v. Siegel, 610 So.2d 419, 424 (Fla.1992), receded from on other grounds in Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So.2d 1239 (Fla.1996). Florida courts have addressed the scope of the access-to-courts provision found in the Florida Constitution on many occasions. See, e.g., Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc., 753 So.2d 55 (Fla.2000); Psychiatric Assocs. v. Siegel, 610 So.2d 419 (Fla.1992); Smith v. Dep't of Ins., 507 So.2d 1080 (Fla.1987); Carter v. Sparkman, 335 So.2d 802 (Fla.1976), receded from on other grounds in Aldana v. Holub, 381 So.2d 231 (Fla.1980); Kluger v. White, 281 So.2d 1 (Fla.1973); Lloyd v. Farkash, 476 So.2d 305 (Fla. 1st DCA 1985). However, most such cases have construed the provision in the factual context of claims that laws enacted by the legislature have restricted the right of access to the courts, often by abolishing a particular remedy. In Psychiatric Associates, the court said (referring to article I, section 21), "The right to go to court to resolve our disputes is one of our fundamental rights." 610 So.2d at 424. In Kluger, the court held:
that where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
281 So.2d at 4. Notwithstanding the relative abundance of cases addressing the access-to-courts provision, however, neither the parties nor we have discovered any Florida decision directly bearing on the issue presented by this appeal. Here, there is no issue of legislative restriction of the right of access. In fact, properly viewed, there is no issue of "restriction" of access at all. Rather, the issue is to what extent article I, section 21, requires the Department to provide more "affirmative" assistance to inmates in the preparation and filing of litigation papers than does the federal constitution.

B.
Appellants argue that, while not directly on point, the decision in Mitchell v. Moore, 786 So.2d 521 (Fla.2001), provides an analytical framework by which one might arrive *853 at an answer regarding the scope of their rights pursuant to article I, section 21. We agree.
In Mitchell, an inmate challenged a Florida statute that required certain inmates seeking to file civil actions without prepayment of filing fees to submit copies of complaints or other initial pleadings filed in the preceding five years. Id. at 524. He claimed that the statute violated the state and federal constitutions for a number of reasons. The court chose to address only the access-to-courts argument. Id. It noted that "[t]here are two sources of the right to access the courts" that implied from the federal constitution and that expressly provided in article I, section 21, of the Florida Constitution. Id. at 525. After discussing the federal right, as delineated in Bounds and Lewis (id.), the court turned in somewhat greater detail to the scope of the right afforded by the Florida provision. Id. at 526-28. Discussing Kluger at some length (id. at 526), the court noted that, unlike Kluger, the case before it was not one in which the legislature had abolished "any asserted right to seek redress from the court for any particular injury"; rather, it was one in which the legislature had "infringed [on] the right to seek redress for any type of injury or complaint of any kind in any civil case...." Id. at 526-27. According to the court, the latter "type of abolition is far greater than the right taken in Kluger, or any of th[e] Court's previous access to court cases." Id. at 527. The court then said:
[T]o find that a right [of access] has been violated it is not necessary for the statute to produce a procedural hurdle which is absolutely impossible to surmount, only one which is significantly difficult. This is so because the Florida Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."... This "openness" and necessity that access be provided "without delay" clearly indicate that a violation occurs if the statute obstructs or infringes that right to any significant degree.
Id. Because it concluded that the requirements of the statute "ha[d] become a door to the Court that some inmates simply cannot open" (id. at 525), the court further concluded that the statute created a "significantly difficult" procedural hurdle. Id. at 527.
Having found that the statute created a "significantly difficult" impediment to access, the court next addressed the test to be applied to determine whether the state's justification for the statute was sufficient to pass constitutional muster. Id. at 527-28. After noting that "[t]he right to access ... specifically mentioned in Florida's constitution ... deserves more protection than those rights found only by implication" (id. at 527) (citing Lloyd v. Farkash, 476 So.2d 305, 307 (Fla. 1st DCA 1985)), the court concluded that a strict-scrutiny, rather than a rational-basis, analysis was appropriate because a "fundamental interest" was being taken. Id. at 527-28. Applying strict scrutiny, the court concluded that the state's justification was not sufficiently narrowly tailored to remedy only the compelling interest identified and, accordingly, held that the statute was unconstitutional. Id. at 528.
It seems to us relatively clear from a careful reading of Mitchell that the court was of the opinion that the Florida access-to-courts provision applies to all types of claims that might be filed by inmates in Florida's courts, not just to claims challenging their convictions or sentences or the conditions of their confinement, or seeking to vindicate a fundamental constitutional right. We glean such an intent *854 principally from the court's statement that "the right which ha[d] been infringed [wa]s the right [of the petitioning inmate] to seek redress for any type of injury or complaint of any kind in any civil case...." Id. at 527. Such a conclusion finds further support in our prior decision in Lloyd v. Farkash, 476 So.2d 305 (Fla. 1st DCA 1985) (cited in Mitchell, with apparent approval, 786 So.2d at 528). In Lloyd, a Florida inmate sought to bring a malpractice action against his former lawyer. 476 So.2d at 306. The trial court dismissed the action on the authority of section 944.292, Florida Statutes (1983), which suspended all civil rights of anyone convicted of a felony until those rights were restored by pardon or other affirmative action. Id. On appeal, we reversed, holding that section 944.292 was an unconstitutional violation of the access-to-courts provision to the extent that "it purport[ed] to deprive convicted felons of their right to bring civil actions in state courts...." Id. at 308.

C.
Clearly, the pertinent facts in Mitchell are different in several respects from those here. In the first place, we do not have a situation where the legislature has sought to limit access to the courts. Moreover, properly viewed, we are not faced with an attempt to restrict access at all. Rather, we must determine to what extent the Florida access-to-courts provision requires the Department to provide more affirmative assistance to inmates than does the federal constitution. Despite these differences, however, we are relatively confident that our supreme court would apply the two-step test announced in Mitchell to this case.
Because it appears that the trial court applied the narrower federal test, rather than the broader article I, section 21, test announced in Mitchell, we conclude that the trial court erred. The parties agree that the sole issue is whether, as a matter of law, the Department's actions violated the Florida provision. Accordingly, to determine whether the error was harmful, thereby requiring reversal, we must analyze the actions complained of by appellants according to the Mitchell test. See, e.g., Brookridge Cmty. Prop. Owners, Inc. v. Brookridge, Inc., 573 So.2d 972, 975 (Fla. 5th DCA 1991) (applying the "tipsy coachman" rule to affirm a summary judgment where, although the trial court's reasoning was erroneous, it reached the correct result because no material facts were in dispute and appellees were entitled to judgment as a matter of law). As we read the court's opinion, we need not determine whether the justifications put forward by appellees in support of the Department's actions stand up to strict scrutiny unless we first conclude that those actions (either individually or collectively) create a "significantly difficult" impediment to appellants' right of access.

IV.
The first question we must resolve in attempting to apply the two-step Mitchell test is what, precisely, the court meant when it said that the right of access must be "significantly obstructed." 786 So.2d at 527. In its opinion, the court did not explain what magnitude an impediment would have to attain to be found to be "significant." (Perhaps it felt it was unnecessary to do so because it had apparently concluded that, in some instances at least, the hurdle imposed by the statute amounted to an insurmountable obstacle.) However, the most commonly understood meanings of the adjective "significant" would appear to be "important" and "of consequence." See, e.g., The Random House Dictionary of the English Language *855 1779 (2d ed. unabridged 1987). Absent any indication from the opinion that a different meaning was intended, we presume that the court intended the adverb "significantly" to be so read.

A.
Appellants first complain that the Department's removal of reference books and inmate-created form pleadings from prison law libraries, and its decision to limit access to legal materials through inter-library loans, violated the access-to-courts provision. They argue that the access-to-courts provision must be read as intended to ensure access to all state and federal courts. Because the prison law library collections do not include materials directly relevant to the law of other states, or to a number of federal legal matters including immigration, racial discrimination, disabilities and veterans' benefits, they contend that the libraries are constitutionally inadequate. Appellees, on the other hand, maintain that the provision is intended to ensure access only to Florida courts. We agree with appellees. We find it inconceivable that the access-to-courts provision was included in our state constitution with the intent that it would ensure for Florida residents access to all courts in this country, state and federal. While we have concluded in part III.B. of this opinion that the provision must be read as requiring the state to assist inmates to file any type of action cognizable in Florida courts, we do not believe that it may be read as requiring the state to assist inmates to file any type of action they might desire in federal courts or the courts of other states, as well. See generally Kinney Sys., Inc. v. Continental Ins. Co., 674 So.2d 86, 92 (Fla.1996) (Article I, section 21 "guarantees every person access to our courts for redress of injuries"); Traylor v. State, 596 So.2d 957, 985 (Fla.1992) (Kogan, J., concurring in part and dissenting in part) (Under article I, section 21, "all persons are guaranteed meaningful access to the courts of this state for the administration of justice"); Hoffman v. Ouellette, 798 So.2d 42, 45 (Fla. 4th DCA 2001) ("Florida courts shall be open to every person for redress of any injury. Art. 1, § 21, Fla. Const."); U.S.B. Acquisition Co. v. U.S. Block Corp., 564 So.2d 221, 222 (Fla. 4th DCA 1990) ("[T]he right of access to our courts is constitutionally protected and should be denied only under extreme circumstances. Art. I, § 21, Fla. Const.").
Major collection prison law libraries currently maintain some 45 titles, including the Federal Reporters, Federal Practice Digest, Florida Cases, Florida Law Weekly, Florida Digest, Florida Jurisprudence, Florida Statutes (official and West's annotated), Florida Court Rules, Shepard's Federal and Florida Citations, Florida Session Laws, and numerous secondary sources on civil and criminal practice and procedure, evidence, corrections and prisoners' rights, legal forms, and legal research. As we have said, the state does have an obligation to maintain libraries sufficient to permit inmates to perform research and prepare legal papers so that they might file any type of claim cognizable in Florida courts. However, the only specific complaint made by appellants regarding the availability of Florida materials is that some secondary materials relating to family law have been removed. Given the materials available in the major collections, we cannot conceive of any claim cognizable in a Florida court (including those based on federal law) that could not be researched and adequately addressed. The fact that other titles have been removed certainly does not significantly obstruct inmates' ability to prepare and file meaningful legal papers. Accordingly, we conclude that the law library *856 collections do not violate the Florida access-to-courts provision.
Appellants also complain about the Department's decision to remove from the libraries inmate-created forms and sample pleadings. They concede that the libraries do include forms prepared or approved by the courts and other legal bodies (such as The Florida Bar), as well as reference form-books (such as Matthew Bender). We fail to see how the removal of inmate-created forms and pleadings constitutes a significant impediment to inmates' access to courts.
The Department limits access to legal materials by means of inter-library loans with libraries outside the prison system, and requires inmates to provide the reason for the materials requested and other information. In almost all cases, such requests involve either federal or out-of-state materials, or secondary treatises. Because we have concluded that the materials available in the major collections appear to be adequate to permit research for, and preparation of, any claim cognizable in a Florida court (including those based on federal law), we conclude, further, that the decision to limit access to materials by means of inter-library loans with libraries outside the prison system does not constitute a significant impediment to inmates' access to courts.

B.
Appellants next complain about the fact that many prison libraries are not open 25 hours each week, as required by departmental rules; rules that prescribe which inmates may use the library, and when; the reduction in the number of inmate research aides; and rules that restrict inmates' ability to avail themselves of the assistance of other inmates, known as "writ writers." According to the parties' stipulation, all law libraries were open at least 21 hours each week. We have reviewed the rules complained of, and find them all to be reasonably related to institutional security. Appellants' arguments fail to convince us that these actions (either individually or collectively) create a significant obstacle to their access to courts. See generally Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (holding that a state may impose reasonable restrictions on assistance by inmates, such as limitations on the time and location of such activities); Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir.1985) (holding that restricted library access does not necessarily amount to a denial of access to courts, and that prison regulations reasonably limiting the times, places and manner in which inmates may engage in legal research and preparation of legal papers are permissible as long as the regulations do not frustrate access to the courts); Shango v. Jurich, 965 F.2d 289, 292 (7th Cir.1992) (holding that "[l]ibrary access may be restricted by time, place and manner regulations that are `justified in light of legitimate security considerations'").

C.
Appellants further claim that the Department deprived inmates of access to the courts by eliminating access to computers, word processors, and typewriters for preparation of legal pleadings or legal mail and removing word processing equipment from all prisons that had such equipment. Appellees concede that it takes longer to prepare handwritten pleadings, and that the removal of such equipment has lengthened the backlog of inmate research aides. However, appellants have failed to identify a single inmate whose right of access to the courts was significantly impeded by these actions (and we note, anecdotally, that we have experienced no perceptible decline in the number *857 of inmate filings since such equipment was removed). We cannot conceive that the access-to-courts provision was intended to require the state to provide inmates with mechanical equipment to facilitate their research and preparation of legal papers. See generally Twyman v. Crisp, 584 F.2d 352, 358 (10th Cir.1978) ("Access to the courts does not include a federally protected right to use a typewriter or to have one's pleadings typed ... [because] pro se prisoners' causes are not prejudiced by the filing of handwritten briefs"). While removing such equipment may make the courts' work more difficult (to the extent that handwritten papers are sometimes more difficult to read), we conclude that removing such equipment did not significantly impede inmates' access to the courts.
Appellants also complain on appeal about a lack of adequate paper, pens and envelopes. Clearly, a consistent failure to provide adequate paper, pens and envelopes would run afoul of both the Florida and the federal right of access, and appellees have conceded as much. However, the stipulation identifies only sporadic shortages of relatively brief duration, which were soon remedied. On the state of this record, we are not prepared to say that such shortages are sufficient to demonstrate a deficiency of constitutional magnitude. See generally Sowell v. Vose, 941 F.2d 32, 34 (1st Cir.1991) ("[I]n cases involving... the availability of supplies (such as paper, pens and pencils), the deprivation `may affect merely comfort or convenience without depriving a prisoner of access to the courts. A court cannot make the assumption that any alleged administrative deficiency or less than optimal clerical arrangement actually impedes a prisoner's ability to file meaningful legal papers.'").

D.
Finally, appellants complain that the Department deprived them of access to the courts by subjecting all legal mail to visual inspection for contraband in the inmate's presence; refusing to grant "legal mail" status to "legal materials" sent to, and received from, nonlawyers, thereby permitting departmental personnel to read pleadings and legal correspondence sent to nonlawyers for typing; and precluding inmates from receiving more than five typed pages in a single envelope without obtaining prior written permission from the warden. A departmental rule provides that only the signature and letterhead of legal mail may be read, to ensure it is not contraband. This rule is clearly reasonably related to institutional security. Moreover, it does not, in our opinion, constitute a significant obstacle to inmate access to courts.
As for the rules relating to "legal materials" sent to, or received from, nonlawyers for typing, we have already concluded (in part IV.C.) that inmates have no protected right to typed legal papers. Moreover, it is clear that no right of confidentiality exists as to documents or communications voluntarily provided to third parties. These rules, as well, are reasonably related to institutional security, and do not create a significant impediment to inmates' access to the courts.

E.
We conclude, further, that the challenged actions do not collectively violate the Florida access-to-courts provision. Certainly, their combined effect will make it somewhat more difficult and time-consuming for inmates to prepare and file legal papers. However, we do not believe that the record carries appellants' burden of demonstrating that, together, those actions will pose a significant obstacle preventing *858 access to the courts. Accepting appellants' arguments would be to "guarantee [to] inmates the wherewithal to transform themselves into litigating engines...." Lewis v. Casey, 518 U.S. at 355, 116 S.Ct. 2174. We do not believe the Florida access-to-courts provision includes any such guarantee.

V.
In summary, we conclude that article I, section 21, of the Florida Constitution (the "access-to-courts" provision) does require the Department to provide more affirmative assistance to inmates in the preparation and filing of litigation papers than does the federal constitution. It requires that the Department provide affirmative assistance as to all types of claims that might be filed in Florida's courts (including those based on federal law), rather than merely as to claims challenging convictions, sentences or conditions of confinement, or seeking to vindicate a fundamental constitutional right; and that the Department's justification for its action or inaction satisfy the strict-scrutiny test when such action or inaction results in a significant impediment to inmates' access to the courts. We also conclude that the trial court applied the wrong test to determine that appellants were not entitled to relief. Nevertheless, we affirm because we conclude, further, that, as a matter of law, either individually or collectively, the actions complained of by appellants do not constitute significant impediments to their right of access to Florida courts.
AFFIRMED.
BOOTH and DAVIS, JJ., concur.