920 So.2d 638 (2005)
Glenn SMITH, Appellant,
v.
FLORIDA DEPARTMENT OF CORRECTIONS, Appellee.
No. 1D03-4571.
District Court of Appeal of Florida, First District.
May 23, 2005.
Rehearing Denied August 29, 2005.
Appellant, pro se.
Charlie Crist, Attorney General; Joe Belitzky, Assistant Attorney General, Tallahassee, for appellee.
WOLF, C.J.
Appellant challenges a final judgment of the circuit court declaring valid certain portions of Rule 33-501.302 of the Florida Administrative Code. Appellant raises two points on appeal, one of which has merit and is dispositive. We conclude that the administrative rule which allows the Department of Corrections ("Department" or "DOC") to charge inmates for photographic copying services is not supported by a specific grant of legislative authority and is, thus, invalid. We reverse and remand for further proceedings consistent with this opinion.
Appellant, a DOC inmate, along with fellow inmate Thomas P. Wells, Jr., filed a petition for declaratory judgment seeking to have those aspects of Rule 33-501.302 of the Florida Administrative Code, establishing the amount to be charged prison inmates for photographic copying services and authorizing deductions from and liens imposed upon inmate trust accounts to cover incurred costs for photographic copying services, declared invalid on grounds that the challenged portions of the rule exceed the Legislature's grant of rulemaking authority to the Department. In support of their request for declaratory relief, appellant and Wells specifically alleged that neither section 20.315 *639 nor section 945.04 of the Florida Statutes, cited by the Department as authority for the challenged rule, "contain any provision authorizing the DOC to make any assessment against inmates for copying costs or even any general rulemaking authority whatsoever." As such, they reasoned, the challenged rule suffered from the same infirmity as the administrative rule invalidated in State, Department of Environmental Regulation v. Manasota-88, Inc., 584 So.2d 133 (Fla. 1st DCA 1991). The circuit court entered summary judgment upholding the validity of the challenged portions of the rule.
Rule 33-501.302 of the Florida Administrative Code, entitled "Copying Services for Inmates," has been in existence in one form or another since 1983. See Fla. Admin. Code Ann. r. 33-501.302 (2005) (originally enacted in 1983 as Rule 33-3.051, and later amended and renumbered as Rule 33-3.0051 and Rule 33-602.405). The promulgation of the rule appears to have been a direct response to the development in the federal courts at the time of the contours of an inmate's federal constitutional right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts.").
In Bounds, the United States Supreme Court specifically held that "the fundamental constitutional right of access to the courts required prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828, 97 S.Ct. 1491. In reaching this conclusion, the Court stated, in dicta, that "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents[,] with notarial services to authenticate them, and with stamps to mail them." Id. at 824-25, 97 S.Ct. 1491. In the wake of the Bounds decision, inmates nationwide used that dicta to argue that the federal constitutional right of inmate access to the courts included the right to the provision of photographic copying services.[1] While the federal courts declined to interpret the federal right of access to the courts, as described in Bounds, as requiring the provision of free and unlimited photocopies to inmates for the purposes of litigation,[2] the federal courts nonetheless *640 interpreted the right, as described in Bounds, as requiring that the inmate be provided access to photocopying services, for which the inmate could be charged a fee, to the extent required to present his or her claims in court.[3]
From the time the copying service rule was originally promulgated, it mandated that all correctional institutions and facilities provide copying services to inmates, it designated the type of materials which could be copied by inmates, and it established a set fee to be paid by inmates for copying services. See Adams v. Dep't of Corr., 469 So.2d 164, 165 (Fla. 1st DCA 1985) (describing substance of rule as originally promulgated). Prior to April 2004, the rule was last amended in June 1998. See Fla. Admin. Code Ann. r. 33-501.302 (2005) (setting forth amendment history of the rule). As it existed at the time the petition for declaratory judgment was filed in this case, the rule was described by this court in Newell v. Moore, 767 So.2d 1240 (Fla. 1st DCA 2000), as follows:
Both the 1998 and current versions of the inmate copying service rule contain five sections that outline how photocopying will be conducted in prison institutions. [Section two] states:
Documents will be copied only if they are necessary to initiate a legal or administrative action or if they must be filed or served in a pending action. The number of copies made shall be the number required to be filed and served according to the rules of the court or administrative body[;] one additional copy shall be made for the inmate to keep if the original is filed or served. Cases, statutes, and other reference materials are not evidentiary materials and will not be copied to accompany legal documents.
This section is followed by section three, which dictates that inmates will be charged fifteen cents per page for standard-sized copies, or more, if the copies require special equipment or paper. Section four describes how inmates may not be denied copies if they are unable to pay for them, and sets forth the process to be followed to place a hold on an inmate's account to compensate the institution for making the copies.
Id. at 1241.
The only statutes ever cited as authority for the rule were sections 20.315 and 945.04, Florida Statutes; however, in April 2004, after the conclusion of the declaratory judgment action below, an amendment to the rule became effective which deleted the reference to section 945.04 as authority for the rule, and replaced it with a citation to section 944.09, Florida Statutes. See 29 Fla. Admin. W. 3808-09 (Sept. 26, 2003) (setting forth proposed amendments to Rule 33-501.302); 30 Fla. Admin. W. 1751 (Apr. 23, 2004) (indicating April 29, 2004, effective date for proposed amendments to Rule 33-501.302, previously published in the September 26, 2003, edition of the Florida Administrative Weekly).
"A proposed or existing rule is an invalid exercise of delegated legislative authority if ... [t]he agency has exceeded its grant *641 of rulemaking authority, citation to which is required by s. 120.54(3)(a)1.," or "[t]he rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(3)(a)1." §§ 120.52(8)(b)-(c), Fla. Stat. (2004).[4] The Legislature has provided the following standards to be used when determining whether a particular rule constitutes an invalid exercise of delegated legislative authority:
A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the same statute.
§ 120.52(8), Fla. Stat. (2004). Under this standard, as interpreted by this court in Southwest Florida Water Management District v. Save the Manatee Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000), "[a]n administrative rule must certainly fall within the class of powers and duties delegated to the agency, but that alone will not make the rule a valid exercise of legislative power." Id. at 599. "The question is whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific enough." Id. (emphasis in original). "Either the enabling statute authorizes the rule at issue or it does not." Id. In addition, under the standard set forth in section 120.52(8), the Department's arguments as to the wisdom of the challenged portions of the rule in light of past experience with providing copying services to inmates, and the lack of arbitrariness in terms of the challenged provisions only applying to those inmates who "voluntarily" seek the "benefits of the photocopying services," cannot save the challenged portions of the rule in the absence of specific statutory authority for those provisions. Cf. Dep't of Corr. v. Hargrove, 615 So.2d 199, 200-01 (Fla. 1st DCA 1993) (analyzing arguments concerning the reasonableness of a particular DOC rule, in terms of whether it was "related to the purpose of the enabling legislation" and whether the rule was "arbitrary and capricious," only after first determining that there existed specific statutory authority for the rule).
Section 20.315, Florida Statutes, creates the Department of Corrections and defines its organizational structure and purpose. Among the listed goals of the Department, as set forth in this statute, is the duty "[t]o ensure that inmates work while they are incarcerated and that the department make[] every effort to collect restitution and other monetary assessments from inmates while they are incarcerated or under supervision." § 20.315(1)(b), Fla. Stat. (2004). Contrary to the position advanced by the Department and adopted by the circuit court, this provision does not in any way authorize the Department to make *642 monetary assessments; it simply authorizes the Department to collect monetary assessments. Such an interpretation of this provision is in keeping with legislative intent.
If section 20.315(1)(b) were interpreted in the manner set forth by the Department, the Department would have unbridled discretion to charge an inmate for any and all services rendered by the Department. While one may argue that this is appropriate public policy, such a policy decision should be made by the Legislature rather than the executive branch.
Further, were section 20.315(1)(b) to be interpreted as authorizing the Department to make monetary assessments like the copy cost assessments authorized by the challenged portions of the rule in this case, there would have been no need for the Legislature to have enacted specific legislation authorizing the collection from inmates by the Department of medical copayments for nonemergency medical services provided to those inmates. See § 945.6037, Fla. Stat. (2004). "[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless." State v. Goode, 830 So.2d 817, 824 (Fla.2002). As such, the language in section 20.315, relied on by both the Department and the circuit court as providing statutory authority for the challenged provisions of Rule 33-501.302, does not appear to contain a specific grant of legislative authority for those provisions under the standard set forth in section 120.52(8) as interpreted in Save the Manatee.
Section 945.04, Florida Statutes, merely sets forth the general functions of the Department. This statute states that the Department "shall be responsible for the inmates and for the operation of, and shall have supervisory and protective care, custody, and control of, all buildings, grounds, property of, and matters connected with, the correctional system." § 945.04(1), Fla. Stat. (2004). Nowhere in this statute does it state that the Department may, in the discharge of its supervisory authority over inmates in the state corrections system, assess monetary charges for services rendered to those inmates. In fact, even the Department appears to have acknowledged, since the conclusion of the proceedings below, that section 945.04 provides no authority for any of the provisions of Rule 33-501.302, because it has deleted the reference to section 945.04 from the rule in terms of the specific statutory authority for the rule.
Finally, even though not initially cited in the rule as statutory authority for the rule, an analysis as to whether section 944.09, Florida Statutes, provides authority for the rule appears to be necessary given the Department's explicit reliance on this provision below and the Department's subsequent amendment of the rule to include a citation to this statute as statutory authority for the rule. Section 944.09 merely sets forth the general rulemaking authority of the Department with regard to, among other things, "[t]he rights of inmates," "[t]he operation and management of the correctional institution or facility and its personnel and functions," "[v]isiting hours and privileges," and "[t]he determination of restitution, including the amount and to whom it should be paid." §§ 944.09(1)(a), (e), (n), (q), Fla. Stat. (2004). Once again, there is no specific grant of authority in this statute for the assessment by the Department of monetary costs for any particular service provided to inmates by the Department. In fact, the supreme court has recognized that "[s]ection 944.09 is merely the general statutory authority for the Department to promulgate rules," and *643 that the Department has "long looked" to other statutory provisions for the specific authority to promulgate particular rules. See Hall v. State, 752 So.2d 575, 579 (Fla. 2000). Consequently, the language in section 944.09, relied on by the Department as providing statutory authority for the challenged provisions of Rule 33-501.302, also does not contain a specific grant of legislative authority for those provisions under the standard set forth in section 120.52(8) as interpreted in Save the Manatee.
Accordingly, like the administrative rule authorizing the assessment of monetary charges declared invalid by this court in State, Department of Environmental Regulation v. Manasota-88, Inc., 584 So.2d 133 (Fla. 1st DCA 1991), those provisions of Rule 33-501.302 establishing the amount to be charged prison inmates for photographic copying services and authorizing deductions from and liens imposed upon inmate trust accounts to cover incurred costs for photographic copying services are not supported by specific legislative authority.
We express no opinion as to whether appellant is entitled to the other relief requested within his petition. Appellant's entitlement to the supplemental relief requested should be addressed by the circuit court on remand.
BARFIELD and LEWIS, JJ., concur.
NOTES
[1] Even though this court recently recognized that a Florida inmate's implicit federal right of access to the courts, as described in Bounds, is "narrower" than his or her explicit right of access to the courts set forth in article I, section 21, of the Florida Constitution, see Henderson v. Crosby, 883 So.2d 847, 850-54 (Fla. 1st DCA 2004), it appears unlikely that inmate access to photocopying services would need to be greater than that required by the federal right in order to conform to the broader state constitutional right of access to the courts. See id. at 857 ("We cannot conceive that the access-to-courts provision was intended to require the state to provide inmates with mechanical equipment to facilitate their research and preparation of legal papers.").
[2] See, e.g., Kershner v. Mazurkiewicz, 670 F.2d 440, 445 (3d Cir.1982) ("`The constitutional concept of an inmate's right of access to the courts does not require that prison officials provide inmates free or unlimited access to photocopying machinery.'") (quoting Johnson v. Parke, 642 F.2d 377, 380 (10th Cir.1981)); Jones v. Franzen, 697 F.2d 801, 803 (7th Cir. 1983) ("[B]road as the constitutional concept of liberty is, it does not include the right to xerox."); Johnson v. Moore, 948 F.2d 517, 521 (9th Cir.1991) ("A denial of free photocopying does not amount to a denial of access to the courts."); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir.1980) ("A prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine, particularly when as here, there are suitable alternatives."); Wanninger v. Davenport, 697 F.2d 992, 994 (11th Cir. 1983) ("We agree with the Tenth and Third Circuits that jail officials do not necessarily have to provide a prisoner with free, unlimited access to photocopies of legal precedents in order to protect the prisoner's right to access the courts.").
[3] See, e.g., Allen v. Sakai, 48 F.3d 1082, 1089 (9th Cir.1995) ("[I]t does not require sophisticated `legal scholarship' to know that a plaintiff's access [to] the courts could be hindered seriously by an inability to make multiple, accurate copies of legal documents."); Johnson, 642 F.2d at 380 ("Allowing inmates to pay for and receive photocopies of the legal materials required by the courts is part of the `meaningful access' to the courts that inmates are constitutionally entitled to.").
[4] The current version of section 120.52(8) cited here is identical in all material respects to the version that existed when appellant initiated the proceedings below. Compare § 120.52(8), Fla. Stat. (2004) with § 120.52(8), Fla. Stat. (2002).