*Ladd v. Pallito*, No. 294-5-15 Wncv (Tomasi, J., Aug 25, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 294-5-15 Wncv |

Eugene Ladd,
  Plaintiff,

  v.

Andrew Pallito, Commissioner,
Vermont Department of Corrections,
  Defendant.

Opinion and Order on Cross-Motions for Summary Judgment

In this case, Inmate Eugene Ladd seeks reimbursement from the Vermont Department of Corrections (DOC) for charges against his inmate account for photocopies he requested of his legal papers (presumably, filings for his various lawsuits).[1]  He asserts that the charges violate a final judgment in a prior case and, otherwise, that such charges could only be lawful if the Legislature specifically authorized them, and it has not.  The parties have filed cross-motions for summary judgment.

Mr. Ladd's basic claim is straightforward.  He believes that the DOC under no circumstances can charge him for making photocopies of his legal papers that he requests unless the Legislature has adopted a statute that expressly so provides.

---

[1] The DOC estimates the amount in dispute in this case is $18.85 as of November 23, 2015.  Mr. Ladd suggests that the amount has grown since then.  In the complaint, Mr. Ladd also sought reimbursement for certain charges for postage ($2.93).  The parties agree that the postage charges now have been reimbursed, and Mr. Ladd has withdrawn that claim.

Based on that belief, he filed a small claims action in 2011 seeking reimbursement for several years' worth of photocopy charges. He prevailed in that case. After the adverse small claims judgment, the DOC evidently continued charging him for photocopying, which led to this case.

Mr. Ladd now argues that, because the legal issue was finally determined by the small claims judgment and the DOC otherwise lacks authority to levy him for photocopies, the charges violate his due process rights and amount to unconstitutional takings. He sued the DOC and the Commissioner in both his official and individual capacities.

The prior judgment and Mr. Ladd's extrapolations in this case have caused the State to brief numerous arguments, including several constitutional issues and immunity doctrines. In the Court's view, however, the case first boils down to three potentially dispositive issues: (a) whether Mr. Ladd properly exhausted his administrative remedies; (b) whether the small claims judgment has any preclusive effect here; and, (c) if not, whether the photocopy charges are unlawful.

It is important to note at the outset, though, what this case is *not* about. This case has nothing to do with Mr. Ladd's right to access the courts or his ability to access photocopy services while in jail. There is no allegation of any denial of such access.

1.   *Summary Judgment Standard*

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine

2

issue as to any material fact and that any party is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers*, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts or affidavits to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991).

2.      *Exhaustion of Administrative Remedies*

The State argues that Mr. Ladd failed to exhaust his administrative remedies because he failed to pursue the final step of the grievance policy, the appeal to the Commissioner. *See* Directive 320.01 Procedural Guidelines § 15(b)(iii) ("Upon return of a Commissioner's decision, the disposition is considered final in regard to administrative remedy. There are no further administrative appeals."). The record is more complicated.

Mr. Ladd reached the step of the grievance policy at which he should have filed a "decision appeal to corrections executive," Grievance Form #5, one step before the appeal to the Commissioner. He asserts that he was unable to identify the correct corrections executive, or whether one existed, and so proceeded directly

3

to appeal to the Commissioner. He so noted his confusion in the appeal to the Commissioner.

The DOC grievance coordinator, recognizing that Mr. Ladd had not already appealed to the corrections executive, spontaneously routed Mr. Ladd's appeal to the Commissioner to the corrections executive instead. The corrections executive denied the appeal. There is no evidence or allegation, however, that either the grievance coordinator or the corrections executive clarified the procedural status of the appeal at any point or told Mr. Ladd that he still needed to appeal to the Commissioner if he wanted to pursue his grievance further. Mr. Ladd then filed this case.

Mr. Ladd now argues that the grievance policy is confusing and his reasonable, good faith efforts at complying with it should be sufficient to satisfy his obligation to exhaust administrative remedies. *See Williams v. Correction Officer Priatno*, No. 14-4777, 2016 WL 3729383, at \*7 (2d Cir. July 12, 2016) (concluding that administrative remedies were sufficiently exhausted where procedures were too "opaque and confusing" to be followed properly).

Typically, the Court would find itself without subject matter jurisdiction in a case like this, where the inmate has not properly exhausted his administrative remedies. Indeed, the Court does not find the DOC's grievance policy confusing, as a general matter. But, in this particular instance, the grievance coordinator introduced unnecessary confusion by rerouting the appeal to the Commissioner to the corrections executive without any explanation to Mr. Ladd from either the

4

grievance coordinator or the corrections executive that a *second* appeal to the Commissioner still would be required to properly exhaust. In these unique circumstances, the Court concludes that Mr. Ladd exhausted his administrative remedies and that it does not lack subject matter jurisdiction.

3. *The Small Claims Judgment*

The small claims judgment has no binding effect on this case because, as a general matter, small claims judgments have no estoppel or preclusive effect on subsequent litigation. *See Cold Springs Farm Development, Inc. v. Ball*, 163 Vt. 466, 470–72 (1995). As explained in *Cold Springs Farm*, a small claims judgment finally resolves the specific damages claim advanced in the small claims case only. *Id*. at 472–73. But, it otherwise does not bar the relitigation of any issue determined in the course of arriving at that judgment in future litigation. *Id*. at 469–72. This is due largely to the informality of small claims. *Id*.

The federal District Court for District of Vermont has suggested that *Cold Springs* stands for the proposition that small claims court judgments are entitled to *res judicata* effect as to the precise matters litigated but not collateral estoppel effect. *Burke v. Dep't of Corrections*, No. 5:14–cv–00272, 2015 WL 1954268, at *3 (D. Vt. April 29, 2015). As a general matter, this Court agrees and, as a leading treatise has noted in an analogous context, a small claims judgment will "preclude any further litigation on the actual claim presented but … [will not] preclude further litigation on any of the issues presented." 18A Charles Wright, Arthur

5

Miller and Edward Cooper, *Fed. Prac. & Proc. Juris.* § 4443 (2d ed.) (citing *United States v. Int'l Bldg. Co.*, 345 U.S. 502 505–06 (1953)).

Here, Mr. Ladd is seeking damages for photocopy expenses that were not at issue in his former small claims case. Accordingly, that small claims judgment has no impact on this case.[2]

Incidentally, the small claims court initially ruled in the DOC's favor. On appeal, the civil division interpreted the small claims decision narrowly as having relied exclusively on two statutes as specific authority for photocopy charges. It reversed and remanded because it did not appear to the Court that those two statutes authorized the charges actually at issue and because additional findings were needed regarding DOC directives, Mr. Ladd's prison accounts, and his possible indigence. But, the Superior Court did not make any final ruling on the larger question of the DOC's authority to charge for photocopies.

On remand, the small claims court, limited by the narrow mandate and the facts, awarded judgment to Mr. Ladd. The State never sought review of the small claims court's second judgment.[3] As a result, the only final judgment with regard to

---

[2] Similarly, small claims courts are not empowered to award injunctive relief, Vt. R. Sm. Cl. P. 2(a); and the judgment at issue in the earlier case did not purport to include equitable relief. The DOC was not bound to conform its subsequent conduct to that judgment, and that prior ruling does not control the legal issue in this case.

[3] At the time, Mr. Ladd was housed out of state in a privately operated facility. The small claims case was defended by private counsel for that facility, not by the Office of the Vermont Attorney General.

the photocopy charge issue is the second ruling from the small claims court, which is not entitled to preclusive effect.

4.    *Authority for Photocopy Charges—Directive #385.01 § 4.3.2.1.11*

The DOC charges inmates a nominal amount for photocopies unless the inmate is indigent. *See* Directives #385.01 § 4.3.2.1.11 (photocopies), #321.01, Definitions (defining indigency). Directive #385.01 § 4.3.2.1.11 applies by its terms to photocopies "of inmate court filings pertaining to state or federal post conviction remedies and civil rights actions involving conditions of confinement." Essentially, if the inmate has less than $10 in his accessible inmate accounts for thirty days in a row, he is indigent and photocopy charges are not assessed. If he is not indigent, the charges are assessed. *See generally* Affidavit of Kathy Corriveau (filed Nov. 30, 2015). No inmates are denied photocopies due to an inability to pay.

Here, as in the initial small claims case, the only authority Mr. Ladd cites for his argument that photocopy charges are unlawful unless the legislature specifically says otherwise is *Smith v. Florida Dept. of Corrections*, 920 So.2d 638 (Fla. Dist. Ct. App. 2005). The *Smith* Court specifically recognized that numerous courts have recognized that there is no right to "the provision of free and unlimited photocopies to inmates for the purposes of litigation." *Id*. at 639. *Based on Florida-specific statutes and case law*, however, it ruled that the Florida corrections department could not charge for photocopies without express, specific legislative authority to do so, which did not exist. *Id*. at 640–43.

7

The *Smith* ruling is peculiar to Florida.  The Court has been directed to no court from another state that has followed *Smith* with regard to this issue.  Indeed, courts have concluded that the rationale in *Smith* was based on Florida-specific law.  *See Olmos v. Ryan*, No. CV 10-2564-PHX-GMS, 2013 WL 4602517, at \*5–6 (D. Ariz. Aug. 29, 2013) (*Smith* is irrelevant to whether Arizona prisoners may be charged for copies); *Searcy v. Idaho State Bd. of Correction*, No. 41216, 2015 WL 160361, at \*10 (Idaho Ct. App. Jan. 14, 2015), *aff'd* 2016 WL 3977207 (Idaho July 22, 2016) (similar and also noting that charging such fees does not require formal administrative rulemaking).

As the Idaho Supreme Court recently noted, "courts have recognized that prison administrators are extended deference when imposing fees that have not been specifically authorized by statute."  *Searcy*, 2016 WL 3977207, at \*5.  Doing so is generally within the broad scope of a corrections department's authority to manage its facilities and the inmates in them.  *Id*. at \*7–8; *accord Olmos* 2013 WL 4602517, at \*5–6.

The Vermont DOC also has been granted such expansive authority.  *See generally* 28 V.S.A. §§ 101, 102(b); *Parker v. Gorczyk*, 170 Vt. 263, 278 (1999) (*citing Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) for the proposition "that broad discretionary authority of prison officials is necessary for them to undertake [the] extraordinarily difficult task of administering prison"); *Conway v. Cumming*, 161 Vt. 113, 115 (1993) (noting "the necessarily broad discretionary authority of prison

8

officials over prison administration"). The DOC has exercised that authority in enacting Directive #385.01 § 4.3.2.1.11.

To the extent that the photocopies at issue in this case fall within the scope of Directive #385.01 § 4.3.2.1.11, the Court concludes that the modest photocopy charges at issue here, and the manner by which they are implemented, are generally within the DOC's broad authority over prison administration. If there were some other legal basis for not imposing them in this case, such as his indigence, it was Mr. Ladd's burden to come forward with it. He has not done so. The DOC is entitled to summary judgment insofar as the photocopying charges in this case fall within Directive #385.01 § 4.3.2.1.11.

5. *Other Authority for Photocopy Charges*

It is unclear whether this case may involve charges for photocopies falling outside the scope of Directive #385.01 § 4.3.2.1.11. Directive #385.01 § 4.3.2.1.12, for instance, appears to more broadly require that "[i]nmates will have access to photocopying services," but does not include any provisions instituting charges or referring to the charges in the previous section. Nor does the record include any clear evidence that the DOC *as a matter of policy* generally permits photocopying and imposes charges in the manner described by Ms. Corriveau. On this limited record, then, the Court is unable to rule out the possibility that the DOC has imposed photocopying charges on Mr. Ladd arbitrarily, in violation of its policies and directives. To the extent that the photocopying charges in this case may fall

9

outside the scope of Directive #385.01 § 4.3.2.1.11, summary judgment is denied at this time.

While the Defendant also raises various immunity defenses, without defining the underlying facts in the preceding paragraph, the Court cannot make a present assessment of those defenses—with two exceptions. Plaintiff's stated claims against Defendant in his individual capacity fail as a matter of law based on absolute immunity, *see Curran v. Marcille*, 152 Vt. 247, 249 (1989); and his federal claims for monetary damages against Defendant in his official capacity are barred because such claims are construed as being against the State, which is not a "person" amenable to suit under 42 U.S.C. § 1983, *see Bock v. Gold*, 2008 VT 81, ¶ 9, 184 Vt. 575, 577 (mem.) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Order

For the foregoing reasons, Mr. Ladd's summary judgment motion is denied, in part; and the State's is granted in part and denied, in part.

Dated this __ day of August 2016, at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Court Judge

10