165 So.2d 762 (1964)
BISCAYNE KENNEL CLUB, INC., a Florida corporation, et al., Appellants,
v.
FLORIDA STATE RACING COMMISSION, etc., et al., Appellees.
No. 33028.
Supreme Court of Florida.
April 29, 1964.
Rehearing Denied July 17, 1964.
Hoffman, Kemper & Johnson, M.L. Mershon of Mershon, Sawyer, Johnston, Simmons & Dunwody, Miami, for appellant Biscayne Kennel Club, Inc.
C.H. Landefeld, Jr., Hollywood, for appellant Broward County Kennel Club, Inc.
Harold Kassewitz, Miami, for appellant West Flagler Kennel Club, Inc.
William Lantaff, of Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, for appellant Hialeah Race Course, Inc.
Bruce Davis, Crescent City, for appellants Broward County Kennel Club, Inc. and Biscayne Kennel Club, Inc.
James W. Kynes, Atty. Gen., and Leonard R. Mellon, Asst. Atty. Gen., for appellee State of Florida.
Willard Ayres, Ocala, for appellee Florida State Racing Commission.
Sullivan, Musselman & Cochran, Pompano Beach, and Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, for appellees *763 Frederick Van Lennep, individually, South Florida Harness Raceways, Inc., a Florida corporation, and Tourist Attractions, Inc.
DREW, Chief Justice.
The appellants, holders of current permits to conduct horse and dog races in Florida and to conduct pari-mutuel wagering in connection therewith, plaintiffs below, filed in the Circuit Court for Leon County a complaint for injunction and other relief against Tourist Attractions, Inc., other individual and corporate respondents, and the Florida State Racing Commission alleging the unconstitutionality of Chapter 63-130, Laws of Florida, General Acts of 1963, F.S.A. § 550.37, and seeking to enjoin any action under or authorized by said act. The trial court granted a motion to dismiss the complaint and expressly sustained the validity of the subject act against assertions that it violates Article III, Sections 16 and 21, and Section 1, Declaration of Rights, Florida Constitution, F.S.A., relating to statutory entitlement, prescriptions for enactment of special legislation, and equal protection of law.
The central problem in this case, as in a prior appearance of the parties here involving an earlier statute, is that of determining whether or not this legislation "must be regarded as an enactment granting to certain permit holders, designated in terms not susceptible of generic application now or in the future,"[1] the privilege of conducting harness racing upon compliance with specified conditions. In resolving this issue we recognize, of course, that the existence of reasonable doubt as to constitutional infringement requires that a presumption of validity be indulged in deference to a coordinate branch of government.[2] Because all of the classifications effected by this act are made on the basis of factors which are potentially applicable to others and which are not purely arbitrary in relation to the subject regulated or the conduct authorized, we conclude that the current effect of the law stipulated to by the parties[3] is not controlling and it must be sustained as a general act of uniform operation.
Chapter 63-130, pursuant to legislative findings concerning favorable tax and tourist effects flowing from development of harness racing as an evening exhibition sport, provides for the transfer, under certain conditions, of existing racing permits to allow establishment of harness racing operations in counties which have by previous referendum for two years approved the operation of race track pari-mutuel pools, excluding those having more than one horse track permit or one with an average *764 daily pari-mutuel pool less than a specified minimum.
The classification of permits made transferable by the act on the basis of average daily pari-mutuel play, less than $20,000 for a minimum seasonal duration, was approved by the able chancellor below, citing other provisions of F.S. Chapter 550, F.S.A.,[4] for special advantages to tracks having minimum mutuel play, in the following language of the final decree:
"* * * The Court cannot say, as a matter of law, that Chapter 63-130 is an arbitrary and unreasonable means of increasing state revenues without increasing the number of establishments at which legalized gambling will be permitted. * * *
"* * * The whole object of the statute in this regard is to permit the removal from one location to another of a track that is operating under financial difficulties so acute as to render its future successful operation and tax-paying ability uncertain. Whether this be wise or unwise is not a matter for judicial inquiry. The question is whether or not it is unconstitutional. There appears to be nothing in this classification that is inherently offensive to the organic law. But the plaintiffs quote facts and figures which, they say, establish the great improbability of other race tracks ever falling into this classification.
"The validity of legislative classification is not dependent upon the probability of others entering or leaving a class. The criteria are: Is the class open to others who may enter it? and, is there a rational distinction between those in the class and those outside it, when the purpose of the legislation and the subject of the regulation are considered?"
With regard to classification of counties into which operations may be transferred under the act, the chancellor found:
"* * * Each of these requirements has a direct bearing upon the probable financial success of the track moving its operations * * * They also have a direct relation to the effect upon state revenues resulting from competition with existing tracks. Limitations in numbers and restrictions upon locations of tracks have long been a part of state regulation of racing, and their validity, as such, is not questioned.
"But plaintiffs insist that these restrictions, spelled out in this statute, are such that they serve to make the statute special and local because when viewed in the light of present conditions they make the future transfer of any other track practically impossible. They point out that the number of counties which have presently voted twice in favor of pari-mutuel betting on races is limited, and that most of these counties are eliminated as future locations for tracks moving their locations under Chapter 63-130 because of the other limitations of the act. But present conditions are not the criterion. It is the prospective application to future conditions that renders a classification constitutional if otherwise reasonable."
Obviously a number of Florida counties may by future referendum acquire racing establishments, and some may reasonably be expected to come within the class covered, i.e. having not more than one horse track with a daily pool above the minimum set. Current geographical preemption is clearly consistent with the acknowledged legislative power to create, temporarily at least, monopoly franchises in this area.[5]
*765 The decree in our opinion properly disposes of these and other points[6] presented here contrary to appellants' contentions and should accordingly be affirmed.
It is so ordered.
THOMAS, THORNAL and O'CONNELL, JJ., concur.
ROBERTS and CALDWELL, JJ., dissent.
ROBERTS, Justice (dissenting).
Chapter 61-1940 sought to grant a special privilege to a track in St. Johns County authorizing its removal to Broward County. Such discriminatory legislation granting such a valued special privilege being in clear violation of the Constitution of Florida, was erased from our statute books in West Flagler Kennel Club, Inc. et al. v. Florida State Racing Commission et al., 153 So.2d 5. The practical effect, as reflected in the record before us in Chapter 63-130 here under attack, reaches the same result, in that it grants a special privilege to Tourist Attractions, Inc. (license holder in Monroe County, Florida) authorizing the removal of its dog track to Broward County, Florida, and further authorizes the conversion from a dog track to a harness track, and even further authorizes the operation of races at varied locations within a forty mile range of its home base, all three being privileges not granted to any other race track in Florida. Chapter 63-130 is buttressed by an extensive preamble and other miscellaneous "supporting vehicles," but obviously had for its purpose, and from a practical standpoint, the same effect as the 1961 Act which was vitiated by this court as special privilege legislation. The attempt to re-cast the objectives and purposes of the 1961 Act into a 1963 Act reminds the author of the old bromide, "a rose by any other name smells the same."
*766 There being, in my opinion, no practical difference in the end result between Chapter 61-1940 previously vitiated by this court, and Chapter 63-130, I must respectfully dissent from the majority opinion.
CALDWELL, J., concurs.
NOTES
[1] This language is quoted from the opinion in West Flagler Kennel Club, Inc. et al. v. Florida State Racing Commission et al., Fla. 1963, 153 So.2d 5. This statute, Chapter 61-1940, Sp.Acts 1961, permitted transfer of operations to one county, Broward, under any permit issued after January, 1946 "under which permits and licenses issued thereon horse racing in harness has been conducted * * * within the five (5) year period" preceding enactment, and was held invalid for lack, inter alia, of any reasonable relationship between the definition of class affected and the ostensible purpose of the law.
[2] "It is established law that the law-making power of the Legislature of the State of Florida is subject only to the limitations provided in our Constitution and no statute should be declared inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that there is a positive conflict. City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769, L.R.A. 1916D, 913, Ann.Cas. 1915D, 99." Armistead v. State ex rel. Smyth, Fla. 1949, 41 So.2d 879, 882. See also Cotten v. Leon County Com'rs, Fla. 1856, 6 Fla. 610; Cheney v. Jones, Fla. 1874, 14 Fla. 587.
[3] We deem it unnecessary to incorporate the contents of the stipulation for the reason that the compiled figures bear solely on the issue of present qualification of permittees and probable county transfer sites under the act. Cf. Greene v. Gray, Fla. 1956, 87 So.2d 504.
[4] F.S. Sections 550.161, 550.163, F.S.A.
[5] Hialeah Race Course v. Gulfstream Park Racing Association, Inc., Fla. 1948, 37 So.2d 692.
[6] The decree finds that

"* * * the quoted part of the title is at least susceptible to the construction that the words `specifically as to referendum election' are intended to modify `except as otherwise provided' instead of `shall be governed.'
"When the language of the title to an act is susceptible to two constructions, one of which renders a vital part of the statute invalid and the other does not, it is the duty of the court to give the title that construction which sustains the validity of the enactment, because the court cannot say beyond a reasonable doubt that the Legislature has failed to meet the requirements of the Constitution in enacting the statute. This is particularly true in the case under consideration in which the first clause of the title `An Act relating to the operation of harness tracks * * *' is clearly broad enough to cover everything found in the body of the act, and the only debatable question is whether or not the remainder of the title is such a restriction upon the quoted clause as to remove from the scope of the act matter which would otherwise be clearly within the subject expressed in the title.
"A careful examination of each of the ten particulars in which plaintiffs contend the title is `misleading' does not reveal any such imposition upon the public by the Legislature in framing the Court in saying that, beyond a reasonable doubt, the effect of the title is to mislead the public as to the contents of the act."
It is further held:
"The third area in which plaintiffs urge that the classification made by Chapter 63-130 is unconstitutional relates to details of the operation of tracks moved by authority of this statute * * *
"It is not necessary  in fact it would be improper  to discuss the validity of these provisions of the statute at this time. Each of them could be held to be invalid without affecting the validity of the remainder of the statute, or the right of the plaintiffs to the relief sought in this action. The complaint prays that Chapter 63-130 be declared invalid and that an injunction issue restraining the transferring of operations under the racing permit held by the defendant Tourist Attractions, Inc. None of the last group of questions go to the validity of the statute as a whole, or the right of the track to seek, or the Racing Commission to grant, a transfer of its base of operations to another county."