928 So.2d 430 (2006)
ST. VINCENT'S MEDICAL CENTER, INC., Appellant/Cross-Appellee,
v.
MEMORIAL HEALTHCARE GROUP, INC. d/b/a Memorial Hospital Jacksonville and Fawcett Memorial Hospital, Inc., Appellees/Cross-Appellants.
No. 1D05-1727.
District Court of Appeal of Florida, First District.
April 28, 2006.
*431 John R. Beranek, Stephen C. Emmanuel, and C. Gary Williams, of Ausley & McMullen, Tallahassee, for Appellant/Cross-Appellee.
Stephen A. Ecenia, J. Stephen Menton, Richard M. Ellis, of Rutledge, Ecenia, Purnell & Hoffman, P.A., Tallahassee, for Appellees/Cross-Appellants.
KAHN, C.J.
St. Vincent's Medical Center appeals a declaratory judgment holding section 408.036(3)(l), Florida Statutes (2004), unconstitutional. Finding the enactment to be a special law disguised as a general law, the circuit court struck down the law pursuant to article III, section 10 of the Florida Constitution. We affirm. We also affirm the circuit court's summary denial of the equal protection claim presented on cross-appeal.

BACKGROUND
In late 2001, St. Luke's Hospital sought permission from the Agency for Health Care Administration ("Agency") to replace its existing hospital with a new facility to be built on the grounds of the current Mayo Clinic in Jacksonville. St. Luke's had an open-heart surgery program at its existing location. Unlike most hospitals in the state, St. Luke's also utilized a "closed-staff" personnel model, meaning that its medical personnel were salaried staff. Based upon evidence presented below, St. Luke's is one of only two hospitals in the state with both an open-heart surgery program and a closed-staff personnel system.
Concurrent with St. Luke's request, St. Vincent's Medical Center sought permission *432 from the Agency to establish a new hospital with an open-heart surgery program in the facility to be vacated by St. Luke's. State law required new hospitals to submit a Certificate of Need ("CON") with the Agency in order to establish an open-heart surgery program.
During the 2003 regular session, the Legislature passed, and the Governor signed into law, chapter 2003-274, Laws of Florida. The law appears as section 408.036(3)(l), Florida Statutes (2004), part of the Health Facility and Services Development Act. The new statute created an exemption from the CON requirement for any adult open-heart surgery program meeting the statute's criteria. These criteria are paramount to our analysis:
(l) Notwithstanding any other provisions of this chapter to the contrary:
1. For an adult open-heart-surgery program to be located in a new hospital provided the new hospital is being established in the location of an existing hospital with an adult open-heart-surgery program, the existing hospital and the existing adult open-heart-surgery program are being relocated to a replacement hospital, and the replacement hospital will utilize a closed-staff model. A hospital is exempt from the certificate-of-need review for the establishment of an open-heart-surgery program if the application for exemption submitted under this paragraph complies with the following criteria:
a. The applicant must certify that it will meet and continuously maintain the minimum Florida Administrative Code and any future licensure requirements governing adult open-heart programs adopted by the agency, including the most current guidelines of the American College of Cardiology and American Heart Association Guidelines for Adult Open Heart Programs.
b. The applicant must certify that it will maintain sufficient appropriate equipment and health personnel to ensure quality and safety.
c. The applicant must certify that it will maintain appropriate times of operation and protocols to ensure availability and appropriate referrals in the event of emergencies.
d. The applicant is a newly licensed hospital in a physical location previously owned and licensed to a hospital performing more than 300 open-heart procedures each year, including heart transplants.

e. The applicant must certify that it can perform more than 300 diagnostic cardiac catheterization procedures per year, combined inpatient and outpatient, by the end of the third year of its operation.
f. The applicant's payor mix at a minimum reflects the community average for Medicaid, charity care, and self-pay patients or the applicant must certify that it will provide a minimum of 5 percent of Medicaid, charity care, and self-pay to open-heart-surgery patients.
g. If the applicant fails to meet the established criteria for open-heart programs or fails to reach 300 surgeries per year by the end of its third year of operation, it must show cause why its exemption should not be revoked.
h. In order to ensure continuity of available services, the applicant of the newly licensed hospital may apply for this certificate of need before taking possession of the physical facilities. The effective date of the certificate of need will be concurrent with the effective date of the newly issued hospital license.
2. By December 31, 2004, and annually thereafter, the agency shall submit a report to the Legislature providing information concerning the number of requests *433 for exemption received under this paragraph and the number of exemptions granted or denied.
3. This paragraph is repealed effective January 1, 2008.

§ 408.036(3)(l), Fla. Stat. (2004) (emphasis added).
On November 7, 2003, Appellees filed a complaint against the Agency in circuit court. In essence, Appellees alleged that St. Vincent's Medical Center is the only hospital in the state that can take advantage of this law. The complaint argued the law was a special law in violation of the Florida Constitution and the law violated equal protection by treating one hospital differently from all others in the state. St. Vincent's Medical Center intervened in the action. The Agency has not appeared in this appeal.
At a summary judgment hearing, the trial judge ruled that factual determinations should be made on whether the law could apply to a hospital other than St. Vincent's. Accordingly, the judge set the case for a non-jury trial. St. Vincent's did, however, receive summary judgment on the equal protection claim.
Both sides presented expert testimony on the contested issue. Dr. Ronald Luke, Appellant's expert in health care planning and health care economics, testified that, within the realm of possibility, "many possible combinations of actors, hospitals, physician groups and health plans" in Florida might qualify for an exemption before the statute sunsets on January 1, 2008. Countering Dr. Luke's testimony, Dr. Todd Sagin, an expert in medical staff issues and hospital relations, and Patty Greenberg, an expert in health planning, testified for the Appellees. Dr. Sagin and Ms. Greenberg testified that no other hospitals could reasonably qualify for the exemption in the time frame allowed by the statute, July 2003 through January 1, 2008.
On March 9, 2005, the trial judge rendered the final declaratory judgment. Concluding that only St. Vincent's could take advantage of the statute, the judge explained:
After considering all of the evidence and the arguments of counsel, it is concluded that the Exemption Provision is a special law passed in the guise of a general law, and is therefore unconstitutional because it was not adopted in accordance with the requirements of Article III, Section 10 of the Florida Constitution. The Exemption Provision is nothing more than a description of the situation involving St. Vincent's and St. Luke's. The Court concludes that the constitutional requirements governing special laws cannot be avoided by merely utilizing generic language in a complicated classification scheme that is intended to address a special circumstance.
The trial judge found no other constitutional infirmities and stated that if the Legislature had simply adhered to the notice requirements of article III, section 10, the statute would have passed constitutional muster.

ANALYSIS
We first consider the appropriate standard of review. In many instances, an evidentiary hearing is an implicit requisite for determining whether a statute may potentially apply to other parties. Compare Fla. Dep't of Bus. & Prof'l Reg., Div. of Pari-Mutuel Wagering v. Gulfstream Park Racing Ass'n, 912 So.2d 616, 620 (Fla. 1st DCA 2005) (finding the question of whether statute could apply to others is, in part, an issue of fact), review pending, No. SC05-2130, with Dep't of Bus. Reg. v. Classic Mile, Inc., 541 So.2d 1155, 1157 (Fla.1989) (determining factual findings unnecessary as all parties agreed it was facially impossible for statute to apply to others) and Ocala Breeders' Sales Co. v. *434 Fla. Gaming Ctrs., Inc., 731 So.2d 21, 25-26 (Fla. 1st DCA 1999) (finding tiebreaker provision of statute made it facially impossible for others to obtain the single license available). Here, the trial court properly conducted an evidentiary hearing. Accordingly, the final declaratory judgment has both factual findings and legal conclusions. Under the familiar maxim, we review findings of fact under the competent substantial evidence standard, while legal conclusions are reviewed de novo. See Gulfstream Park, 912 So.2d at 620 ("We accept the trial court's findings of fact and apply the de novo standard of review only to the legal conclusion drawn from the facts."). Arguing for de novo review, St. Vincent's urges this court to determine independently whether Appellees failed to prove their case beyond a reasonable doubt. See Lakeland Reg'l Med. Ctr., Inc. v. Fla. Agency for Health Care Admin., 917 So.2d 1024, 1030 (Fla. 1st DCA 2006) (stating that a statute will not be found unconstitutional unless proven invalid beyond a reasonable doubt). Nevertheless, we review the circuit court's factual findings for legal sufficiency, not evidentiary weight, just as we would in a criminal case. See, e.g., Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981) ("Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.").
We move to the question of whether the statute in question is a special law or a general law. This determination boils down to whether the statute may prospectively apply to parties other than St. Vincent's. See Ocala Breeders', 731 So.2d at 25 ("If it is possible in the future for others to meet the criteria set forth in the statute, then it is a general law and not a special law. This test applies even if only one entity currently qualifies under the statute and even if the House and Senate members voting on the bill were aware that it would benefit only one specific entity." (citations omitted)); see also Biscayne Kennel Club, Inc. v. Fla. State Racing Comm'n, 165 So.2d 762, 763 (Fla.1964) ("Because all of the classifications effected by this act are made on the basis of factors which are potentially applicable to others and which are not purely arbitrary in relation to the subject regulated or the conduct authorized, we conclude that the current effect of the law stipulated to by the parties is not controlling and it must be sustained as a general act of uniform operation." (footnote omitted)). We recently enunciated the standard for determining whether a statutory class is open or closed:
We acknowledge that the class is not closed for the purpose of this analysis merely because it is unlikely that it will include anyone else. However, we could not say that the class is open merely because there is a theoretical possibility that some day it might include someone else. That approach would undermine the constitutional requirements for the adoption of special laws. We conclude from the applicable precedents that the proper standard is whether there is a reasonable possibility that the class will include others.

Gulfstream Park, 912 So.2d at 622 (emphasis added); see also Biscayne Kennel Club, 165 So.2d at 764 ("[S]ome [additional parties] may reasonably be expected to come within the class covered").
The circuit court judge applied the correct legal standard in his analysis by considering present and prospective applicability of the statute. As the judge remarked during the evidentiary hearing:
[A]t least at this time nobody has applied or there's no evidence of that. That wouldn't be the test, would it? The test would be if there's some potential for the statute to be applied to any other hospital.
The circuit court heard extensive, conflicting expert testimony regarding the statute's *435 potential applicability to parties other than St. Vincent's before the sunset date of January 1, 2008. In the final declaratory judgment, the court accepted the testimony of Appellees' experts as more credible. The court noted:
[T]here is only one hospital or group of hospitals, St. Vincent's and St. Luke's, that can currently take advantage of the Exemption Provision.
The court then considered whether another party could prospectively qualify for the exemption before the sunset date. Such consideration is, we think, implicit in paragraph 13 of the judgment:
The Respondent and the Intervenor also suggest that the repealer date in this statute could potentially be extended by a future legislature; however, the Court must review and evaluate the statute based upon the existing provisions and cannot presume that the legislature will make future amendments.
After considering all of the evidence, the circuit court judge determined that no hospital, other than St. Vincent's, could qualify for the statutory exemption. The court's findings of fact are supported by competent substantial evidence, particularly the testimony of Dr. Sagin and Patty Greenberg. The circuit court also correctly applied the law when it concluded there is no reasonable possibility the exemption could currently or prospectively apply to any other party before it sunsets on January 1, 2008.
Finally, we find no merit to Appellees' equal protection argument on cross-appeal. Accordingly, we AFFIRM the decree in all respects.
LEWIS and POLSTON, JJ., concur.