967 So.2d 794 (2007)
ST. VINCENT'S MEDICAL CENTER, INC., Appellant,
v.
MEMORIAL HEALTHCARE GROUP, INC., etc., et al., Appellees.
No. SC06-1047.
Supreme Court of Florida.
September 6, 2007.
*796 Major B. Harding and Stephen C. Emmanuel of Ausley and McMullen, Tallahassee, FL, for Appellant.
Stephen A. Ecenia and Richard M. Ellis of Rutledge, Ecenia, Purnell and Hoffman, P.A., Tallahassee, FL, for Appellees.
ANSTEAD, J.
We have on appeal a decision of a district court of appeal declaring a state statute invalid. St. Vincent's Medical Center, Inc. v. Memorial Healthcare Group, Inc., 928 So.2d 430 (Fla. 1st DCA 2006). We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. The issue before this Court is whether section 408.036(3)(l), Florida Statutes (2004), is unconstitutional as a special law enacted in the guise of a general law and without compliance with the specific requirements for the enactment of special laws. We affirm the holding of the district court, approving the trial court's judgment that this statute is an unconstitutional special law because there is no reasonable possibility that any other hospital in Florida, except St. Vincent's, could meet the requirements of the certificate-of-need (CON) exemption provided by the statute before it expires on January 1, 2008.

I. FACTS and PROCEDURAL HISTORY
The facts and procedural history of this case are summarized in the First District's opinion:
In late 2001, St. Luke's Hospital sought permission from the Agency for Health Care Administration ("Agency") to replace its existing hospital with a new facility to be built on the grounds of the current Mayo Clinic in Jacksonville. St. Luke's had an open-heart surgery program at its existing location. Unlike most hospitals in the state, St. Luke's also utilized a "closed-staff" personnel model, meaning that its medical personnel were salaried staff. Based upon evidence presented below, St. Luke's is one of only two hospitals in the state with both an open-heart surgery program and a closed-staff personnel system.
Concurrent with St. Luke's request, St. Vincent's Medical Center sought permission from the Agency to establish a new hospital with an open-heart surgery program in the facility to be vacated by St. Luke's. State law required new hospitals to submit a Certificate of Need ("CON") with the Agency in order to establish an open-heart surgery program.
During the 2003 regular session, the Legislature passed, and the Governor signed into law, chapter 2003-274, Laws of Florida. The law appears as section 408.036(3)(l), Florida Statutes (2004), part of the Health Facility and Services Development Act. The new statute created an exemption from the CON requirement for any adult open-heart surgery program meeting the statute's criteria. These criteria are paramount to our analysis:
(l) Notwithstanding any other provisions of this chapter to the contrary:
1. For an adult open-heart-surgery program to be located in a new hospital provided the new hospital is being established in the location of an existing hospital with an adult open-heart-surgery program, the existing hospital and the existing adult open-heart-surgery program are being relocated to a replacement hospital, and the replacement hospital will utilize a closed-staff model. A hospital is exempt from the certificate-of-need review for the establishment of an open-heart-surgery program if the application *797 for exemption submitted under this paragraph complies with the following criteria:
a. The applicant must certify that it will meet and continuously maintain the minimum Florida Administrative Code and any future licensure requirements governing adult open-heart programs adopted by the agency, including the most current guidelines of the American College of Cardiology and American Heart Association Guidelines for Adult Open Heart Programs.
b. The applicant must certify that it will maintain sufficient appropriate equipment and health personnel to ensure quality and safety.
c. The applicant must certify that it will maintain appropriate times of operation and protocols to ensure availability and appropriate referrals in the event of emergencies.
d. The applicant is a newly licensed hospital in a physical location previously owned and licensed to a hospital performing more than 300 open-heart procedures each year, including heart transplants.
e. The applicant must certify that it can perform more than 300 diagnostic cardiac catheterization procedures per year, combined inpatient and outpatient, by the end of the third year of its operation.
f. The applicant's payor mix at a minimum reflects the community average for Medicaid, charity care, and self-pay patients or the applicant must certify that it will provide a minimum of 5 percent of Medicaid, charity care, and self-pay to open-heart-surgery patients.
g. If the applicant fails to meet the established criteria for open-heart programs or fails to reach 300 surgeries per year by the end of its third year of operation, it must show cause why its exemption should not be revoked.
h. In order to ensure continuity of available services, the applicant of the newly licensed hospital may apply for this certificate of need before taking possession of the physical facilities. The effective date of the certificate of need will be concurrent with the effective date of the newly issued hospital license.
2. By December 31, 2004, and annually thereafter, the agency shall submit a report to the Legislature providing information concerning the number of requests for exemption received under this paragraph and the number of exemptions granted or denied.
3. This paragraph is repealed effective January 1, 2008.
§ 408.036(3)(l), Fla. Stat. (2004) (emphasis added).
On November 7, 2003, Appellees filed a complaint against the Agency in circuit court. In essence, Appellees alleged that St. Vincent's Medical Center is the only hospital in the state that can take advantage of this law. The complaint argued the law was a special law in violation of the Florida Constitution and the law violated equal protection by treating one hospital differently from all others in the state. St. Vincent's Medical Center intervened in the action. The Agency has not appeared in this appeal.
At a summary judgment hearing, the trial judge ruled that factual determinations should be made on whether the law could apply to a hospital other than St. Vincent's. Accordingly, the judge set the case for a non-jury trial. St. Vincent's did, however, receive summary judgment on the equal protection claim.

*798 Both sides presented expert testimony on the contested issue. Dr. Ronald Luke, Appellant's expert in health care planning and health care economics, testified that, within the realm of possibility, "many possible combinations of actors, hospitals, physician groups and health plans" in Florida might qualify for an exemption before the statute sunsets on January 1, 2008. Countering Dr. Luke's testimony, Dr. Todd Sagin, an expert in medical staff issues and hospital relations, and Patty Greenberg, an expert in health planning, testified for the Appellees. Dr. Sagin and Ms. Greenberg testified that no other hospitals could reasonably qualify for the exemption in the time frame allowed by the statute, July 2003 through January 1, 2008.
On March 9, 2005, the trial judge rendered the final declaratory judgment. Concluding that only St. Vincent's could take advantage of the statute, the judge explained:
After considering all of the evidence and the arguments of counsel, it is concluded that the Exemption Provision is a special law passed in the guise of a general law, and is therefore unconstitutional because it was not adopted in accordance with the requirements of Article III, Section 10 of the Florida Constitution. The Exemption Provision is nothing more than a description of the situation involving St. Vincent's and St. Luke's. The Court concludes that the constitutional requirements governing special laws cannot be avoided by merely utilizing generic language in a complicated classification scheme that is intended to address a special circumstance.
The trial judge found no other constitutional infirmities and stated that if the Legislature had simply adhered to the notice requirements of article III, section 10, the statute would have passed constitutional muster.
St. Vincent's, 928 So.2d at 431-33.

First District Review
On review, the First District affirmed the trial court's decision holding that section 408.036(3)(l) is an unconstitutional special law. Id. at 431. The First District first found the trial court's findings to be supported by competent, substantial evidence, noting that the trial judge considered both current and prospective applicability of the statute, heard "extensive, conflicting expert testimony," and found the appellees' testimony to be more credible. Id. at 434-35. The First District further held that the trial court correctly applied the law when it concluded that there was no "reasonable possibility" that the exemption could apply to any other party before it expired. Id. at 435. The First District relied upon its earlier opinion in Florida Department of Business & Professional Regulation v. Gulfstream Park Racing Ass'n., Inc., 912 So.2d 616 (Fla. 1st DCA 2005), aff'd, Nos. SC05-2130 & SC05-2131, 967 So.2d 802, 2007 WL 2492308 (Fla. Sept. 6, 2007), emphasizing that, based upon Gulfstream Park, "the proper standard [in determining whether a law is an unconstitutional special law] is whether there is a reasonable possibility that the class will include others." St. Vincent's, 928 So.2d at 434 (quoting Gulfstream Park, 912 So.2d at 622) (emphasis supplied). St. Vincent's Medical Center now appeals the First District's decision that section 408.036(3)(l) is unconstitutional.[1]

*799 II. GOVERNING LAW and ANALYSIS
The question presented involves both factual and legal issues. As the district court correctly noted, appellate courts review a trial court's factual findings to determine the existence of supporting competent, substantial evidence, while the legal question of whether a law is a special or general law is a legal question subject to de novo review. See St. Vincent's, 928 So.2d at 434 ("Under the familiar maxim, we review findings of fact under the competent substantial evidence standard, while legal conclusions are reviewed de novo."); Schrader v. Fla. Keys Aqueduct Auth., 840 So.2d 1050, 1055 (Fla.2003) ("We have held that whether a law is a special or general law is a pure legal question subject to de novo review.").
Importantly, when a court has declared a state statute unconstitutional, the reviewing court must begin the process with a presumption that the statute is valid. Dep't of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879, 881 (Fla.1983).
Article III, section 10 of the Florida Constitution provides as follows:
No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected.
Art. III, § 10, Fla. Const.[2] The Florida Constitution defines "special law" as "a special or local law." Art. X, § 12(g), Fla. Const. Furthermore, this Court has previously defined "special law" and "general law" as:
[A] special law is one relating to, or designed to operate upon, particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal; a local law is one relating to, or designed to operate only in, a specifically indicated part of the state, or one that purports to operate within classified territory when classification is not permissible or the classification adopted is illegal.
A general law operates universally throughout the state, or uniformly upon subjects as they may exist throughout the state, or uniformly within permissible classifications by population of counties or otherwise, or is a law relating to a state function or instrumentality.
State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237, 240 (Fla.1934) (citations omitted).
As with the circuit court and the district court, our legal analysis begins with the language challenged in the statute itself, *800 section 408.036(3)(l), Florida Statutes (2004):
(3) EXEMPTIONS.Upon request, the following projects are subject to exemption from the provisions of subsection (1):
(1) Not withstanding any other provision of this chapter to the contrary:
l. For an adult open-heart-surgery program to be located in a new hospital provided the new hospital is being established in the location of an existing hospital with an adult open-heart-surgery program, the existing hospital and the existing adult open-heart-surgery program are being relocated to a replacement hospital, and the replacement hospital will utilize a closed-staff model. A hospital is exempt from the certificate-of-need review for the establishment of an open-heart-surgery program if the application for exemption submitted under this paragraph complies with the following criteria:
a. The applicant must certify that it will meet and continuously maintain the minimum Florida Administrative Code and any future licensure requirements governing adult open-heart programs adopted by the agency, including the most current guidelines of the American College of Cardiology and American Heart Association Guidelines for Adult Open Heart Programs.
b. The applicant must certify that it will maintain sufficient appropriate equipment and health personnel to ensure quality and safety.
c. The applicant must certify that it will maintain appropriate times of operation and protocols to ensure availability and appropriate referrals in the event of emergencies.
d. The applicant is a newly licensed hospital in a physical location previously owned and licensed to a hospital performing more than 300 open-heart procedures each year, including heart transplants.
e. The applicant must certify that it can perform more than 300 diagnostic cardiac catheterization procedures per year, combined inpatient and outpatient, by the end of the third year of its operation.
f. The applicant's payor mix at a minimum reflects the community average for Medicaid, charity care, and self-pay patients or the applicant must certify that it will provide a minimum of 5 percent of Medicaid, charity care, and self-pay to open-heart-surgery patients.
g. If the applicant fails to meet the established criteria for open-heart programs or fails to reach 300 surgeries per year by the end of its third year of operation, it must show cause why its exemption should not be revoked.
h. In order to ensure continuity of available services, the applicant of the newly licensed hospital may apply for this certificate of need before taking possession of the physical facilities. The effective date of the certificate of need will be concurrent with the effective date of the newly issued hospital license.
2. By December 31, 2004, and annually thereafter, the agency shall submit a report to the Legislature providing information concerning the number of requests for exemption received under this paragraph and the number of exemptions granted or denied.
3. This paragraph is repealed effective January 1, 2008.
§ 408.036(3)(l), Fla. Stat. (2004).
After an evidentiary hearing, wherein the trial judge heard two days' worth of testimony from a total of five expert witnesses, the trial judge concluded that St. Vincent's is the only hospital in the state that meets all of the criteria necessary to merit an exemption under the provisions *801 of the statute. Generally, while St. Vincent's presented evidence that closing a medical staff could technically be done over a short period of time, that any number of organizations in the state could replicate the St. Luke's/St. Vincent's transaction, and that the sunset date in the statute still allows enough time for other parties to take advantage of the exemption, Memorial's experts presented testimony that the relationship between St. Luke's and St. Vincent's was highly unusual, if not unprecedented. These witnesses further testified that the decision and procedure to close a medical staff was not only complicated and onerous, but that the entire process contemplated by the statute takes so long to accomplish that other parties could not realistically utilize the exemption before the sunset date; and, finally, that there were no hospitals or medical organizations in the state currently contemplating any type of relocation that would come remotely within the realm of the exemption.[3] We agree with the First District below that the trial court's findings are supported by competent, substantial evidence. Based on a review of the record, we find no error in the trial court's findings of fact in this instance.
Turning to the legal conclusion based upon these facts, the First District held that the trial judge properly found that there was no reasonable possibility that the statute could prospectively apply to parties other than St. Vincent's. St. Vincent's, 928 So.2d at 435. Reviewing this conclusion de novo pursuant to Schrader, we also find no error in the district court's legal analysis or conclusion.
St. Vincent's does not dispute that the statute's provisions appear tailored to fit its plans to establish a new hospital. Rather, St. Vincent's challenges the district court's invocation of a "reasonable possibility" standard rather than a mere possibility standard in any assessment of whether others may qualify under the statute's exemption. However, as we recently held in Florida Department of Business & Professional Regulation v. Gulfstream Park Racing Ass'n, Nos. SC05-2130 & SC05-2131, 967 So.2d 802, 2007 WL 2492308 (Fla. Sept. 6, 2007), "a review of our case law and the underlying purpose behind the constitutional restrictions contained in article III, section 10, supports the reasonableness standard used by the First District and its application to this case." Op. at 809. In Gulfstream Park, we confronted a statute that prohibited a racetrack from selling broadcasts within its market area if it is within twenty-five miles of at least two other racetracks. Id. at 804. While the parties agreed that, at the time of the statute's enactment, it applied only to one particular part of the state, they differed as to whether the statute was open to application to other areas of the state in the future. Id. at 808. As we held in that case,
In essence, we must choose between a wholly speculative evaluation of the possibility of the future application of a statute as advanced by the appellants and the practical reasonableness standard articulated by the district court. While our own case law has been largely silent on this issue, an examination of the analysis applied in each case implicitly suggests that we ourselves were applying a reasonableness and realistic possibility standard in assessing a statute's potential future operation. Nowhere in any of our decisions have we indicated that a wholly speculative or *802 unreasonable potential would satisfy the constitutional mandate of article III, section 10.
Id. at 809. Accordingly, we agreed with the First District's conclusion in that case, finding that there was no reasonable possibility that the statute would ever apply to other parts of the state. Id. at 809.
While the courts should never second-guess the Legislature about the policy decisions contained within a challenged statute, we are nevertheless obligated to give meaningful effect to the notice procedures for special laws mandated by Florida's Constitution. Consistent with this obligation we have emphasized in Gulfstream Park that whether a law has general application turns on a determination of whether its application to others is reasonable or practical, not theoretical or speculative. The question of general application is not to be guided by irrational speculation that anything is possible. Id. at 809 ("[A]ny determination of possible future applications of a statute must be done by a realistic and reasonable assessment. Otherwise, such an assessment would essentially be standardless, a situation we do not believe to be consistent with judicial review and enforcement of article III, section 10.").

CONCLUSION
Section 408.036(3)(1) provides a CON exemption for certain hospitals seeking to establish an open-heart surgery program. Both the trial court and the district court concluded that there is no reasonable possibility that any hospitals other than St. Vincent's could take advantage of the exemption before it sunsets on January 1, 2008. We find no error in the findings of the trial court and the legal analysis of the district court concluding that section 408.036(3)(l) is an unconstitutional special law enacted in the guise of a general law. Accordingly, we affirm the First District's decision below.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] We find appellees' claim that the statute violates equal protection because it contains an unconstitutional classification scheme to be procedurally barred as they did not file a cross-appeal to this Court on this issue. Regardless, we agree with the First District that there is no merit in this claim. See St. Vincent's, 928 So.2d at 435.
[2] Section 11.02, Florida Statutes (2004), provides the notice requirements for special laws:

The notice required to obtain special or local legislation or any relief act specified in s. 11.065 shall be by publishing the identical notice in each county involved in some newspaper as defined in chapter 50 published in or circulated throughout the county or counties where the matter or thing to be affected by such legislation shall be situated one time at least 30 days before introduction of the proposed law into the Legislature or, there being no newspaper circulated throughout or published in the county, by posting for at least 30 days at not less than three public places in the county or each of the counties, one of which places shall be at the courthouse in the county or counties where the matter or thing to be affected by such legislation shall be situated. Notice of special or local legislation shall state the substance of the contemplated law, as required by s. 10, Art. III of the State Constitution.
§ 11.02, Fla. Stat. (2004).
[3] While evidence was presented that the Cleveland Clinic-Westin in South Florida is a closed-staff hospital with an open-heart surgery program, the trial judge found that it does not perform the 300 procedures annually required by the statute.