WOLF, J.
Appellant challenges the validity of certain 2013 amendments to the medical malpractice presuit notice sections of the Florida Statutes:' sections 766.106 and 766.1065. These amendments in pertinent part allow for presuit ex parte interviews between potential defendants and the potential claimant’s treating health care providers and require the potential claimant to sign a written waiver of federal privacy protection concerning relevant medical information prior to instigating a medical malpractice lawsuit. Appellant raises four state constitutional challenges and one challenge based on federal preemption, alleging that the statutory amendments (1) violate the separation of powers doctrine; (2) violate the constitutional limitation on special legislation; (3) impermissibly burden the constitutional guarantee of free access to the courts; (4) violate the decedent’s constitutional right to privacy; and (5) are preempted by the Health Insurance Portability Accountability Act of 1996 (“HIPAA”). We affirm the trial court’s *877 determination of the validity of the statutory changes.

I.The Statutory Amendments

The medical malpractice presuit notice statutes require a claimant to provide a potential defendant with notice prior to filing suit and implement a 90-day tolling period after service of the notice in order for the parties to investigate the claim presuit. § 766.106(3), Fla. Stat. (2013).
Prior to the 2013 amendments, five methods of informal discovery were available to the parties when conducting this presuit informal investigation, including the taking of unsworn statements. § 766.106(6)(b)(l)-(5), Fla. Stat. (2012).
However, the amendments added a new method of informal discovery for prospective defendants: interviews of treating health care providers. See Ch. 2013-108 § 3, Laws of Fla. (codified at § 766.106(b)(5), Fla. Stat. (2013)); Ch. 2013-108 § 4, Laws of Fla. (codified at § 766.1065(3), Fla. Stat. (2013)).
These interviews are to be “consistent with the authorization for release of protected health information,” which must be signed by the claimant prior to the initiation of the medical malpractice lawsuit. § 766.106(2)(a), Fla. Stat. (2013). The authorization itself explicitly provides permission for potential defendants to conduct ex parte interviews with the claimant’s health care providers. § 766.1065(3)(E), Fla. Stat.
The medical malpractice claimant may revoke the authorization for release of protected health information; however, if the claimant does so, the presuit notice that was served with the authorization “is deemed retroactively void from the date of issuance, and any tolling effect that the presuit notice may have had on any applicable statute-of-limitations period is retroactively rendered void.” § 766.1065(3)(G), Fla.- Stat.
Thus, a claimant now cannot institute a medical malpractice lawsuit without authorizing ex parte interviews between the claimant’s health care providers and the potential defendant. § 766.1065(3), Fla. Stat.[1]

II.Procedural Posture

Appellant filed a complaint in which she requested a declaratory judgment and in-junctive relief against appellee on July 1, 2013. She alleged that she had contemplated filing a medical malpractice action, but was concerned that the amendments to the medical malpractice presuit notice statutes were violative of both the Florida Constitution and HIPAA.
The trial court, after a hearing on both parties’ motions for summary judgment, determined the 2013 amendments were constitutional and not preempted by HI-PAA.

III.Standards of Review

Our review of the trial court’s determination regarding the constitutionality of the statute and its amendments is de novo. Caribbean Conservation Corp. v. Florida Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 500 (Fla.2003). However, if a statute can be construed to be constitutional, it should be. VanBibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880, 883 (Fla.1983); see also Abdool v. Bondi, 141 So.3d 529, 538 (Fla.2014).
Our review of the federal preemption issue is also de novo. Vreeland v. Ferrer, 71 So.3d 70, 72 (Fla.2011).

*878
IV. Do the Amendments Violate the Separation of Powers Doctrine ?

Appellant first alleges that the amendments’ addition of ex parte interviews to the permissible methods of informal discovery is a procedural change which im-permissibly conflicts with the limitations on informal discovery methods as outlined by Florida Rule of Civil Procedure 1.650.
Article V, section 2(a) of the Florida Constitution provides that the Florida Supreme Court is to “adopt rules for the practice and procedure in all courts.” Legislation which impermissibly intrudes on this process violates the separation of' powers provision contained in article II, section 3 of the- Florida Constitution. ‘ Thus, though the Legislature may enact substantive law, the Florida Supreme Court alone has the authority to adopt judicial rules of practice and procedure. See Se. Floating Docks, Inc. v. Auto-Owners Ins. Co., 82 So.3d 73, 78 (Fla.2012); Massey v. David, 979 So.2d 931, 936 (Fla.2008).
It is a two-step process to determine whether a statute “impermissibly encroaches on [the Supreme Court’s] rule-making authority.” Massey, 979 So.2d at 936. First, there must be a determination as to whether the statute is substantive or procedural. Caple v. Tuttle’s Design-Build, Inc., 753 So.2d 49, 53 (Fla.2000). If the statute is deemed procedural, then a determination must be made as to whether that “ ‘legislatively imposed ‘procedure’ is interfering with and intruding upon the procedures and processes of [the Florida Supreme Court] and conflicts with [the Florida Supreme Court’s] own rule regulating the procedure.’ ” Looney v. State, 803 So.2d 656, 676 (Fla.2001) (quoting Jackson v. Fla. Dep’t of Corr., 790 So.2d 381, 385 (Fla.2000)).

A. Procedural or Substantive

Laws of procedure “ ‘encompass the course, form, manner, means, method, mode, order, process or steps by which a pariy enforces substantive rights or obtains redress for their invasion.’ ” Abdool, 141 So.3d at 538-39 (quoting Massey, 979 So.2d at 936-37).
Substantive law, on the other hand, is law which “ ‘creates, defines, and regulates rights, or that part of the law which courts are established to administer. It includes those rules and principles which fix and declare the primary rights of individuals with respect towards their persons and property.’ ” Id. (quoting Massey, 979 So.2d at 936-37).
Appellant contends that the amendments are procedural because the ex parte presuit interviews are a discovery tool, and discovery itself is procedural. See Dodson v. Persell, 390 So.2d 704, 706 (Fla.1980) (“This Court, as most jurisdictions, adopted discovery as part of our procedural rules to improve our system of justice.”). We reject this contention.
As distinguished by the statute itself, the informal discovery process of medical malpractice cases differs from formal discovery. § 766.106(6)(a), Fla. Stat. Informal discovery occurs presuit and is a form of investigation which “is not discoverable or admissible in any civil action for any pmpose by the opposing party.” § 766.106(5), Fla. Stat. (emphasis added).
Further, the presuit notice requirement itself is “primarily substantive”:
The statute was intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding. A major factor in this process is the provision *879 that tolls the statute of limitations to afford the parties an opportunity to attempt to settle their dispute. We find that the statute is primarily substantive and that it has been procedurally implemented by our rule 1.650, Florida Rules of Civil Procedure.
Williams v. Campagnulo, 588 So.2d 982, 983 (Fla.1991).
The informal discovery methods outlined in the medical malpractice presuit statute, like the presuit notice requirement itself, are integral to promoting “the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceeding,” and, therefore, cannot be divorced from the other substantive aspects of the statute. Id. As such, we find the amendments are not procedural, as alleged by appellant, but rather are integral to the substantive presuit notice statute.

B. Conflict Between Rule 1.650 and the Amended Statute

We also determine that the statutory amendments do not impermissibly conflict with Florida Rule of Civil Procedure 1.650.
Appellant alleges that the statutory amendments’ addition of ex parte interviews to the methods of informal discovery conflicts with the rule, which lists only 3. informal discovery methods:
[T]he parties may obtain presuit screening discovery by one or more of the following methods: unsworn statements upon oral examination; production of documents or things; and physical examinations.
Fla. R. Civ. P. 1.650(c)(1).
We disagree, as we do not believe that the supreme court intended to limit the Legislature’s ability to adopt additional informal discovery methods by enacting rule 1.650. Rather, it appears that the supreme court intended only to codify the medical malpractice presuit statute.
For example, the rule itself was created in response to the medical malpractice pre-suit notice statutes and explicitly states, “This rule applies only to the procedures prescribed by section 766.106, Florida Statutes, for presuit screening of claims for medical malpractice.” Fla. R. Civ. P. 1.650(a); see also In re Medical Malpractice Presuit Screening Rules — Civil Rules of Procedure, 536 So.2d 193, 193 (Fla.1988).
The rule also appears to mirror section 766.106(6), Florida Statutes, as it was amended three months after its enactment to specify methods of informal discovery. The original version of the medical malpractice presuit screening statute, which was enacted in 1987 and originally numbered as section 768.57, did not explicitly mention specific methods of informal discovery. § 768.57(5), Fla. Stat. (1987). The only mention of informal discovery was to state that “[n]o statement, discussion, written -document, report, or other work product generated by the presuit screening process is discoverable or admissible in any civil action for any purpose by the opposing party.” § 768.57(5), Fla. Stat. (1987). Additionally, the statute noted that, upon receipt by the defendant of the notice of the claim, “the parties shall make discoverable information available without formal discovery.” Id.
However, three months later on July 5, 1988, the medical malpractice presuit statute was amended by chapter 88-277 to include more thorough guidelines regarding informal discovery: “Informal discovery may be used by a party to obtain unsworn statements, the production of documents or things, and physical and mental examinations ...” Ch. 88-277, § 48, at *880 1494, Laws of Fla.; see also Cohen v. Dauphinee, 739 So.2d 68, 71 (Fla.1999).
Rule 1.650 mirrors those amendments listing the types of discovery permissible pursuant to the statute: unsworn statements upon oral examination; production of documents or things; and physical examinations.” Fla. R. Civ. P. 1.650(c)(1).
Because the rule was created by the Florida Supreme Court in response to the statute and lists the types of informal discovery laid out in the statute itself, it appears that the rule was intended to mirror the statute rather than serve as a limitation on the Legislature’s ability to adopt additional discovery methods.
In summation, we find that the statutory amendments to the medical malpractice presuit notice statute do not intrude upon the supreme court’s procedural rule-making power because they are integral to other substantive portions of the statute, and they do not conflict with rule 1.650.

V. Do the Medical Malpractice Presuit Notice Statutes Constitute a Special Law?

Appellant claims that the medical malpractice presuit notice statutes themselves are special laws because they are under-inclusive, applying solely to medical malpractice claims. We find that the statutes do not amount to an impermissible special law, but rather amount to a general law that properly applies to an open class of claimants and potential defendants.
Article III, section 11 of the Florida Constitution prohibits special laws relating to certain subjects. Pertinent to this litigation are subsections (a)(3) and (a)(7), which prohibit statutes concerning rules of evidence and conditions precedent to any civil proceeding. Art. Ill, § 11(a)(3), (a)(7), Fla. Const. If the amendments constituted special laws, they would be viola-tive of article III, section 11.
The prohibition against special laws is intended “to prevent state action benefitting local or private interests.” Lawnwood Med. Ctr., Inc. v. Seeger, 990 So.2d 503, 513 (Fla.2008). A special law is “ ‘one relating to, or designed to operate upon, particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal’ ” Id. at 509 (quoting Fla. Dep’t of Bus. & Prof'l Reg. v. Gulfstream Park Racing Ass’n, 967 So.2d 802, 807 (Fla.2007)).
In contrast, a general law is “ ‘a statute relating to ... subjects or to persons or things as a class, based upon proper distinctions and differences that inhere in or are peculiar or appropriate to the class.’ ” Id. (quoting State ex. rel. Gray v. Stoutamire, 131 Fla. 698, 179 So. 730, 733 (1938)).
“General laws may apply to specific areas if their classification is permissibly and reasonably related to the purpose of the statute.” State v. Leavins, 599 So.2d 1326, 1336 (Fla. 1st DCA 1992) (citation omitted). A permissible classification is one which “bears a reasonable relationship to the purpose of the statute and is ‘based upon proper distinctions and differences that inhere in or are peculiar or appropriate to a class.’ ” Ocala Breeders’ Sales Co., Inc. v. Fla. Gaming Ctrs., Inc., 731 So.2d 21, 25 (Fla. 1st DCA 1999) (quoting Dep’t of Bus. & Prof'l Reg. v. Classic Mile, Inc., 541 So.2d 1155 (Fla.1989)).
Appellant argues that chapter 2013-108 establishes special evidentiary privileges for the benefit of medical malpractice defendants, because “[n]o justification exists for restricting putative plaintiffs’ rights or enhancing the discovery rights of putative defendants, their counsel, their insurers, or their potential consultants and wit *881 nesses in the manner that sections 766.106 and 766.1065 do.”
As observed by appellee, there are two criteria that render a law general when it operates on the basis of a classification system. See Biscayne Kennel Club, Inc. v. Fla. State Racing Comm’n, 165 So.2d 762, 763-64 (Fla.1964). “The criteria are: Is the class open to others who may enter it? [A]nd, is there a rational distinction between those in the class and those outside it, when the purpose of the legislation and the subject of the regulation are considered?” Id. at 764.
This statute meets both criteria. The class, litigants in medical malpractice actions, is open in that all citizens of the state are potential claimants, and the class of potential defendants changes constantly as providers begin or cease the practice of medicine.
Additionally, we determine there is a reasonable relationship between the class of potential medical malpractice parties and the statutes which govern the medical malpractice presuit notice periods, including the recent amendments. Treating these plaintiffs and defendants differently than other tort claimants and defendants is justified by the purpose of protecting the public health by ensuring the availability of adequate medical care. Sections 766.106 and 766.1065 were originally enacted by the Legislature to combat the financial crisis in the medical liability insurance industry by encouraging early settlement and negotiation of claims. See Univ. of Miami v. Echarte, 618 So.2d 189, 191-92 (Fla.1993). Informal pretrial discovery, including the ex parte interview method, allows the parties to collect the information necessary for settlement discussions prior to trial.
Appellant argues the supreme court has held that medical malpractice plaintiffs now may not be treated differently from other plaintiffs because no medical malpractice crisis exists, relying on Estate of McCall v. U.S., 134 So.3d 894, 910-12 (Fla.2014), for support.
The holding in McCall was limited by its terms to wrongful death litigation involving medical malpractice and the limited holding that there was no reasonable basis for treating two medical malpractice claimants in the same litigation differently with one claimant possibly being fully compensated and one not. On this basis, the court determined the statutory cap on non-economic damages violated the Equal Protection clause of the Florida Constitution. Id. at 901. A majority of the court did not adopt the expansive interpretation urged by appellant that medical malpractice parties cannot be treated differently than other tort litigants. The court has repeatedly rejected this proposition.[2]

VI. Whether the Amendments Burden Appellant’s Right to Access the Courts?

Appellant alleges that her right to access the courts is burdened by the amendments to the medical malpractice presuit notice statutes. We disagree.
Article I, section 21 of the Florida Constitution provides that “[t]he courts shall be open to every person for redress of any *882 injury, and justice shall be administered without sale, denial or delay.”
In Kluger v. White, 281 So.2d 1 (Fla.1973), the Florida Supreme Court held that a substantive right to redress for a particular injury cannot be “abolish[ed] ... without providing a reasonable alternative” to that right, unless there is an “overpowering public necessity for the 'abolishment ” of that substantive right and “no alternative method of meeting such public necessity can be shown.” Id. at 4 (emphasis added). Therefore, unless a given statute abolishes, eliminates, or severely limits a substantive right to redress of a specific injury, then the well-known two-part test established in Kluger and set forth by appellant in her initial brief simply does not apply. Instead, a court analyzing a statute that merely imposes conditions to the right to sue must uphold such a statute as long as it does not impose a hurdle that is either impossible to surmount, or so significantly difficult that it is the effective equivalent of a bar to suit.
The supreme court has determined that caps on the amount of noneconomic damages that tort plaintiffs could recover were so significant as to effectively “abolish” the plaintiffs right to recovery. Smith v. Dep’t of Ins., 507 So.2d 1080, 1088 (Fla.1987). At the other end of the spectrum, the Florida Supreme Court has also stated that the Legislature is free to “impose[ ] a reasonable condition precedent to filing a claim.” Warren v. State Farm Mut. Auto. Ins. Co., 899 So.2d 1090, 1097 (Fla.2005).
A statute which merely imposes a condition precedent to suit without .abolishing or eliminating a substantive right must be upheld in the face of a constitutional challenge unless the statute “create[s] a ‘significantly difficult’ impediment to ... right of access.” Henderson v. Crosby, 883 So.2d 847, 854 (Fla. 1st DCA 2004) (quoting Mitchell v. Moore, 786 So.2d 521 (Fla.2001)); see also Sasso v. Ram Prop. Mgmt., 431 So.2d 204, 209 (Fla. 1st DCA 1983); Spencer v. Fla. Dep’t of Corr., 823 So.2d 752, 756 n. 6 (Fla.2002) (defining “access to courts” in circumstances where right to sue was only conditioned but not abolished as “the avoidance of significant impediments to the filing of nonfrivolous legal claims”) (emphasis added).
The requirement of a medical malpractice claimant to sign and serve an authorization form as part of the presuit process does not “abolish or eliminate” any substantive right that medical malpractice plaintiffs currently enjoy. Instead, all that is imposed is a precondition to suit, in addition to those that are already in existence under chapter 766. If the authorization form is served with the presuit notice of intent, there is no barrier to the courthouse doors for medical malpractice plaintiffs, nor are such plaintiffs’ substantive rights of recovery against health care providers modified in any way.
In fact, the predecessor statute to section 766.106, which contains the present notice and screening requirements, has already been upheld as not violating the access to courts provision of the Florida Constitution. Lindberg v. Hosp. Corp. of America, 545 So.2d 1384, 1386 (Fla. 4th DCA 1989), approved 571 So.2d 446 (Fla.1990).
Though appellant is correct that the amendments to the authorization for release of protected health information now require the claimant to expressly authorize ex parte interviews between former health care practitioners with information relevant to the potential lawsuit and the potential defendant, we find that like the presuit notice requirement itself, this is a reasonable condition precedent to filing suit, and, thus, does not violate her right to access *883 the courts. See Williams, 588 So.2d at 983.

VII. Whether the Amendments Violate the Decedent’s Right to Privacy?

Appellant finally alleges that the amendments to the medical malpractice presuit screening statutes, including the authorization of ex parte interviews between treating physicians and potential defendants, violate the decedent’s right to privacy guaranteed by article I, section 23 of the Florida Constitution. We disagree.
It is well-established in Florida and across the country that any privacy rights that might attach to a claimant’s medical information are waived once that information is placed at issue by filing a medical malpractice claim. See, e.g., Barker v. Barker, 909 So.2d 333, 337 (Fla. 2d DCA 2005); Andreatta v. Hunley, 714 N.E.2d 1154, 1157 (Ind.Ct.App.1999). Thus, by filing the medical malpractice lawsuit, the decedent’s medical condition is at issue.[3]
Under analogous circumstances, this court has held that when a claimant pursues a workers’ compensation claim, the claimant no longer has any expectation of privacy in his or her relevant medical records that might support the claim. See Poston v. Wiggins, 112 So.3d 783, 785-86 (Fla. 1st DCA 2013); S & A Plumbing v. Kimes, 756 So.2d 1037, 1041-42 (Fla. 1st DCA 2000). Before the statutory changes that appellant challenges here, claimants in appellant’s position already had to disclose and produce relevant medical records to the defense team during the presuit period. See § 766.106(2)(a), Fla. Stat. (2013) (requiring disclosure of “copies of all of the medical records” relied upon by claimant and claimant’s expert). Just as these older statutory provisions have never been found invalid for infringing on the constitutional right to privacy, the most recent changes to the statute also satisfy constitutional privacy protections.

VIII. Are the Amendments Preempted by HIPAA?

Appellant finally claims that the amendments are preempted by the Health Insurance Portability Accountability Act of 1996 (“HIPAA”). After de novo review, we find this contention meritless.
We adopt the well-reasoned analysis of the Eleventh Circuit in Murphy v. Dulay, 768 F.3d 1360 (11th Cir.2014), and determine the statute is not preempted by HI-PAA.

Summary

In summation, we find the medical malpractice presuit notice statutes and their 2013 amendments to be constitutional and, additionally, not preempted by HIPAA. As such, the holdings of the trial court are AFFIRMED.
ROWE and BILBREY, JJ., concur.

. The Legislature has a history of classifying torts and applying specific laws only to certain tort classes. Examples of this abound in chapter 768, Florida Statutes, which covers torts that arise from negligence and shows how torts are categorized under the law. Such distinctions include section 768.0755, Florida Statutes, which governs "Premises liability for transitory foreign substances in a business establishment;” section 768.13, Florida Statutes, governing the Good Samaritan Act; and section 768.136, Florida Statutes, "Liability for canned or perishable food distributed free of charge.”

. We also note information not relevant to the potential lawsuit is not discoverable during the informal discovery process. § 766.1065(3)(C), Fla. Stat. Section 766.1065(3)(Q allows the claimant to list health care providers to whom the authorization for release of information does not apply because those providers possess health care information that “is not potentially relevant to the claim of personal injury or wrongful death that is the basis of the accompanying presuit notice.” § 766.1065(3)(C), Fla. Stat.